**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SAVON THOMAS & COLLEEN E.** | ) | |
| **MCLAUGHLIN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.  1:19-cv-01696-PAB** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AMAZON.COM SERVICES, INC. &** | ) | |
| **AMAZON.COM, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED ........................................................................... vi

SUMMARY OF ARGUMENT PRESENTED ......................................................................... vii

I.  INTRODUCTION ................................................................................... 1

II.  STATEMENT OF ALLEGED FACTS ................................................... 3

III.  ARGUMENT ........................................................................................... 5

    A.  Legal Standard For Judgment On The Pleadings Pursuant to Rule 12(c) ................................................................................................ 5

    B.  Plaintiffs Fail To State A Claim Because, Under Ohio Law, Time Spent Passing Through Security Screening Is Not Compensable ............ 6

        1.  The Portal-to-Portal Act Amended the FLSA to Clarify that "Preliminary and Postliminary Activities," Such As Security Screening, are not Compensable ..................................... 6

        2.  Ohio Law Has Incorporated The Portal-to-Portal Act, Thus Disposing Of Plaintiffs' Claim Under Ohio Law ......................... 8

    C.  Any Time Spent Passing Through Security Screening During Meal Breaks Is Not Compensable Because Amazon Does Not "Require" Any Employee To Do So ...................................................................... 15

    D.  Plaintiffs' Complaint Fails To State A Claim Because Passing Through Security Screening Involves No Exertion And Therefore Is Not "Work." ...................................................................................... 16

CONCLUSION ..................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) &*
  *Wage & Hour Litig.,*
  852 F.3d 601 (6th Cir. 2017) ..................................................................8, 11, 12, 14

*In re: Amazon.Com, Inc. Fulfillment Ctr. Fair Labor Standards Act (FLSA) &*
  *Wage & Hour Litig.,*
  905 F.3d 387 (6th Cir. 2018) ...........................................................................11, 17

*In re: Amazon.Com, Inc.*
  2016 WL 1268296, at *3 (W.D. Ky. Mar. 31, 2016)...........................................18

*Anderson v. Mt. Clemens Pottery Co.,*
  328 U.S. 680 (1946), *superseded by statute, Portal–to–Portal Act of 1947* ...............6, 17, 18

*Bania v. Ford Motor Co.,*
  1992 WL 214522 (6th Cir. Sept. 2, 1992) .............................................................17

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007).................................................................................................5

*Bey v. WalkerHealthCareIt, LLC,*
  2018 WL 2018104 (S.D. Ohio May 1, 2018) ..................................................13, 14

*Brock v. City of Cincinnati,*
  236 F.3d 793 (6th Cir. 2001) .................................................................................17

*Carnahan v. Morton Bldgs. Inc.,*
  41 N.E.3d 239 (Ohio Ct. App. 2015).....................................................................12

*Chao v. Akron Insulation & Supply, Inc.,*
  184 F. App'x 508 (6th Cir. 2006) ..........................................................................17

*Covington v. HKM Direct Market Comms., Inc.,*
  2003 WL 22784378 (Ohio Ct. App. 2003).............................................................12

*Craig v. Bridge Bros. Trucking, LLC,*
  823 F.3d 382 (6th Cir. 2016) ...................................................................................9

*Gorman v. Consolidated Edison Corp.,*
  488 F.3d 586 (2d Cir. 2007)...................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Haas v. Behr Dayton Thermal Prods.*,
2008 WL 11351383 (S.D. Ohio Dec. 22, 2008) ....................................................14

*Heard v. Nielson*,
2017 WL 2426683 (S.D. Ohio June 2, 2017) ...................................................9, 14

*Hill v. U.S.*,
751 F.2d 810 (6th Cir. 1984) ..............................................................................15

*Hishon v. King & Spalding*,
467 U.S. 69 (1984) ................................................................................................5

*IBP, Inc. v. Alvarez*,
126 S. Ct. 514 (2005) ............................................................................................7

*Integrity Staffing Solutions, Inc. v. Busk*,
574 U.S. 27, 135 S. Ct. 513 (2014) ............................................................ *passim*

*Iqbal v. Ashcroft*,
556 U.S. 662 (2009) ..............................................................................................5

*Jelus v. All Creatures Animal Hosp., Inc.*,
2016 WL 3074406 (S.D. Ohio May 27, 2016) ................................................9, 14

*Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers*,
325 U.S. 161 (1945) ............................................................................................18

*Jones-Turner v. Yellow Enter. Sys., LLC*,
597 F. App'x 293 (6th Cir. 2015) .......................................................................16

*Kollstedt v. Princeton City Sch. Bd. of Educ.*,
2010 WL 597825 (S.D. Ohio Feb. 17, 2010).....................................................13

*Lacy v. Reddy Elec. Co.*,
2013 WL 3580309 (S.D. Ohio July 11, 2013)....................................................10

*McCrimon v. Inner City Nursing Home, Inc.*,
2011 WL 4632865 (N.D. Ohio Sept. 30, 2011)....................................................9

*Mezibov v. Allen*,
411 F.3d 712 (6th Cir. 2005) ................................................................................6

*Rayner v. Mills*,
685 F.3d 631 (6th Cir. 2012) ..............................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Reich v. IBP, Inc.*,
  38 F.3d 1123 (10th Cir. 1994) ................................................................................19

*Ruffin v. MotorCity Casino*,
  775 F.3d 807 (6th Cir. 2015) ...............................................................2, 15, 16, 17

*Shalala v. Ill. Council on Long Term Care, Inc.*,
  529 U.S. 1 (2018)....................................................................................................18

*Stancourt v. Worthington City School Dist. Bd. of Edn.*,
  841 N.E. 2d 812 (Ohio Ct. App. 2005).................................................................12

*State v. Stevens*,
  11 N.E.3d 252 (Ohio 2014)....................................................................................12

*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*,
  321 U.S. 590 (1944)....................................................................................17, 18, 19

*Thomas v. Speedway SuperAmerica, LLC*,
  508 F.3d 496 (6th Cir. 2007) ...................................................................................9

*Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*,
  615 F.3d 622 (6th Cir. 2010) ...................................................................................5

*United States v. Wise*,
  370 U.S. 405 (1962)................................................................................................13

*Vogel v. City of Medina*,
  2018 WL 637465 (N.D. Ohio Jan 31, 2018)...........................................................5

*Wee Care Child Ctr., Inc. v. Lumpkin*,
  680 F.3d 841 (6th Cir. 2012) ...................................................................................5

*Wilson v. PrimeSource Health Care of Ohio, Inc.*,
  2017 WL 2869341 (N.D. Ohio July 5, 2017) ...................................................8, 10

**Statutes**

29 U.S.C. § 216(b) ........................................................................................................14

29 U.S.C. § 251(a) ..........................................................................................................7

29 U.S.C. § 252................................................................................................................7

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

29 U.S.C. § 254...................................................................................................................7

ORC 4111.03 ............................................................................................................... *passim*

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should grant judgment on the pleadings in favor of Defendants pursuant to Federal Rule of Civil Procedure 12(c) because, on the pleadings in this case, it is clear, as a matter of law and fact, that Plaintiffs cannot prove that the act of exiting their workplaces through various security apparatus is compensable working time entitling them to alleged unpaid overtime wages under Ohio Revised Code 4111.03.

## SUMMARY OF ARGUMENT PRESENTED

Plaintiffs allege that they are owed unpaid overtime wages under Ohio wage and hour law for time spent walking through security screening while employed at an Amazon fulfillment center in Ohio. Plaintiffs purport to bring this claim on behalf of themselves and a putative class. The pleadings establish that Plaintiffs cannot state a claim upon which relief can be granted.  Dismissal is proper for at least three reasons.

First, time spent walking through security screening is not compensable under Ohio law. Ohio's wage and hour statute states overtime is to be paid "in the manner and method provided in" the FLSA "as amended" – thus expressly incorporating the FLSA's overtime standards, definitions, and principles.  The United States Supreme Court has ruled that, under the FLSA, post-shift time spent passing through security screening is not compensable. *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513 (2014). Thus, Plaintiffs' claim fails under Ohio law as well.

Second, Plaintiffs' claim that they are entitled to overtime pay for time spent walking through security to take their meal breaks fails because Amazon did not require Plaintiffs to pass through security screening when taking meal breaks. Rather, it is undisputed that Plaintiffs were able to take their meals, completely relieved of all work duties, inside multiple on-site break rooms they could access without walking through security.  Whether Plaintiffs passed through security before taking their meal break was something entirely within their control and discretion.

Finally, Plaintiffs' claim fails because time spent walking through security screening– whether post-shift or during meal breaks–is not "work" under Ohio law or the FLSA because it requires no exertion. Exertion is an essential condition for an activity to amount to "work," with the sole exception, not at issue here, of when an employee is "engaged to wait."  Plaintiffs' claim thus fails as a matter of law, and dismissal is proper.

## I.  INTRODUCTION

In their one-count Complaint, Plaintiffs seek unpaid overtime wages under Ohio wage and hour law for time spent walking through security screening while employed at an Amazon fulfillment center in Ohio. Plaintiffs purport to bring this claim on behalf of themselves and a putative class.  The pleadings establish that Plaintiffs cannot state a claim upon which relief can be granted.

Ohio law, like the federal Fair Labor Standards Act ("FLSA"), requires overtime premium pay for employees who work in excess of 40 hours in a single workweek. The issue of what constitutes compensable working time to count toward that 40-hour threshold has been frequently litigated under the FLSA.  It is undisputed that the United States Supreme Court has ruled that, under the FLSA, post-shift time spent passing through security screening is ***not*** compensable time. *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 135 S. Ct. 513 (2014) (time spent walking through security screening at Amazon fulfillment center is not compensable working time under the FLSA).  This is why Plaintiffs do not proceed under the FLSA.

Despite overwhelming authority that Ohio's overtime standards and procedures are interpreted *identically* to those under the FLSA, Plaintiffs allege that Ohio law mandates the opposite result than the Supreme Court's 2014 holding in *Busk*. Plaintiffs are wrong for at least three reasons.

First and fundamentally, the Ohio statute under which Plaintiffs bring their sole claim, Ohio Revised Code 4111.03 ("ORC 4111.03"), states that overtime is to be paid "in the manner and method provided in" the FLSA "**as amended**."  The courts are unanimous that, by this language, Ohio law has expressly "incorporated" all of the FLSA's standards, definitions, and principles relating to overtime.  Accordingly, courts have uniformly held also that ORC 4111.03 and the FLSA contain identical requirements and are governed by the same standards. Indeed,

courts analyze FLSA and Ohio state law overtime claims concurrently, reasoning that the result under either statute is the same.

Despite ORC 4111.03's express incorporation of the FLSA "as amended," Plaintiffs allege that Ohio has not "adopted" the Portal-to-Portal Act, the 1947 statute that amended the FLSA to exclude "preliminary and postliminary" activities, such as security screening, from being compensable. Plaintiffs' contention is meritless. Courts have concluded that the overtime provision in Ohio Minimum Fair Wage Standards Act ("OMFWSA"), enacted in 1974, incorporated the FLSA "as amended," which includes the Portal-to-Portal Act, and thus have applied the Portal-to-Portal Act to Ohio state law claims.  This Court should not hesitate to do the same in this case.

Second, Plaintiffs claim that they are entitled to overtime pay for time spent walking through security to take their meal breaks fails for the additional reason that they were able to take their meals, completely relieved of all work duties, inside multiple on-site break rooms they could access without walking through security. Consequently, Amazon did not *require* Plaintiffs (or anyone) to pass through security screening when taking a meal break. An employee's off-duty meal break does not become compensable merely because the employee voluntarily chooses to shorten it. *See, e.g., Ruffin v. MotorCity Casino*, 775 F.3d 807, 810-11 (6th Cir. 2015) (so long as employees are relieved of work duties, requiring employees to remain on-site during meal breaks does not render mealtime compensable).

Finally, Plaintiffs' claim fails for another, independent reason: time spent walking through security screening–whether post-shift or during meal breaks–is not "work" under Ohio law (or the FLSA) because it requires no exertion. Exertion remains an essential condition for an activity to amount to "work," with the sole exception of when an employee is "engaged to wait"–which is not this case.

In the end, Plaintiffs' overtime claim fares no better under Ohio law than it would under the FLSA. Accordingly, and as set forth more fully below, the Court should dismiss Plaintiffs' claim with prejudice.

## II.    STATEMENT OF ALLEGED FACTS[1]

Plaintiffs were required to pass through a security screening after clocking out at the end of each shift at the Amazon fulfillment center where they worked (the "CLE2" facility). Compl. ¶19; Defendants' Answer and Affirmative Defenses ("Answer") ¶¶ 7-8. But they do not (and cannot) dispute the following facts.

1.    Amazon provides all CLE2 employees with on-site lockers outside the secured area where, prior to their shifts, employees can leave any personal belongings that can set off the metal detectors, and expressly instructs employees to do so. *Id.* at ¶ 21-22.

2.    At shift end, workers walking through security screening choose from among ten screening lanes, each with its own metal detector. *Id.* at ¶ 22. Four of the CLE2 screening lanes are "express lanes" where employees who left their personal belongings in those Amazon-provided lockers, or who do not carry items that could set off the metal detector, are able to pass through screening without breaking stride on their way out of the building. *Id.* Four other screening lanes are "divestment lanes" where employees who choose to wear or carry into the secured area items that could set off metal detectors may slide such items down a slanted ramp adjacent to the metal detector and pick them up again after walking through the detector–typically without stopping. *Id.* at ¶¶ 22, 24-26. The remaining two screening lanes have conveyors where employees who choose to carry bags into the secured area may place those bags for scanning via x-ray while the employee walks through screening. *Id.*

---

[1]    Defendants accept Plaintiffs' allegations–to the extent they are well-pleaded–as true only for purposes of this motion, as required at the motion for judgment on the pleadings stage.

3. When employees walking through security screening set off a metal detector, they are directed to a secondary screening area only a few feet from the security lanes. A security guard then passes a metal-detecting wand over the employee, a process typically taking under a minute; while this secondary screening is carried out, other employees continue to pass through the security lanes without interruption. *Id.* at ¶ 23.

4. After clocking out at the end of their shift, Amazon employees may freely engage in personal activities, such as talking to colleagues, waiting for carpool mates, using a break room, using on-site computers and electronic entertainment devices provided by Amazon, going to lockers, or using the restroom before swiping their badge and walking through exit turnstiles to depart the facility. *Id.* at ¶ 25.

5. Fulfillment center employee shift schedules are staggered such that, for any given shift end or meal break, only a portion of employees will be clocking out. *Id.* at ¶ 22.

6. As to Plaintiffs' assertion that they were required to go through the same security screening "prior to taking their lunch breaks" (Compl. ¶ 20)–their Complaint does not explain or refute the fact that Amazon provides on-site break room facilities inside the secured area where CLE2 employees, including Plaintiffs, can–and do–take their meal breaks *without* having to pass through security screening.  Specifically, CLE2 has had throughout the entirety of its operation (and Plaintiffs' employment) four break rooms (three of which are inside the secured area and accessible without having to pass through security screening).  Answer ¶ 20. Two of the three breakrooms inside the secured area have services including, but not limited to, refrigerators, microwaves, "Open Market" kiosks providing food and drink, vending machines, coffee machines, toaster ovens, arcade games, and televisions. *Id.* The third internal break room contains seating

and vending machines. Any employee can–and many employees do–take meal breaks in the internal break rooms.  *Id*.

## III.    ARGUMENT

### A.    Legal Standard For Judgment On The Pleadings Pursuant to Rule 12(c)

A motion for judgment on the pleadings under Rule 12(c) is evaluated by the same standard as a Rule 12(b)(6) motion to dismiss. *See Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 846 (6th Cir. 2012). The court "shall consider the complaint, answer and any instruments attached as exhibits in making its determination on a motion for judgment on the pleadings." *Vogel v. City of Medina*, 2018 WL 637465, at *1 (N.D. Ohio Jan 31, 2018). *See also* Fed. R. Civ. P. 7(a) (defining "pleadings" to include the complaint and answer).

Rule 12(b)(6) requires a court to dismiss a complaint if, accepting the well-pleaded facts as true, the plaintiff fails to plead sufficient facts to support the relief sought. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  Although a court does not analyze the probability of actual proof of the complaint's allegations on a motion to dismiss, a plaintiff still must allege enough factual matter (taken as true) to suggest the required elements.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  Under *Twombly*'s "plausibility" standard, Plaintiffs' claim can survive the instant motion only if they identify "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (internal citations omitted).

"[A] plaintiff's obligation to provide the grounds for his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Twombly*, 550 U.S. at 558 (internal citations omitted).  In addition, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal v. Ashcroft*, 556 U.S. 662, 679 (2009). "[C]onclusory allegations or legal

conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

### B.     Plaintiffs Fail To State A Claim Because, Under Ohio Law, Time Spent Passing Through Security Screening Is Not Compensable.

As detailed below, Ohio wage and hour law explicitly incorporates all of the overtime standards, principles, and definitions set forth in the FLSA "***as amended***" – which includes the Portal-to-Portal Act.  Courts are unanimous that Ohio's adoption of FLSA's overtime provisions is unequivocal and, accordingly, analyze Ohio state law overtime claims in exactly the same manner as FLSA overtime claims – including claims involving the Portal-to-Portal Act.  Because Ohio expressly directs courts to apply Ohio's overtime rules "in the same manner and [using the] methods in" the FLSA "***as amended***," the Portal-to-Portal Act applies to Plaintiffs' claims.  As post-shift time spent passing through security screening is ***not*** compensable under the FLSA, *see Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513 (2014), Plaintiffs' Ohio state law claims likewise fail.

### 1.     The Portal-to-Portal Act Amended the FLSA to Clarify that "Preliminary and Postliminary Activities," Such As Security Screening, are not Compensable.

To aid the Court's analysis, a brief history of the FLSA and the Portal-to-Portal Act follows. As originally enacted in 1938, the FLSA established minimum wage and overtime requirements for employees. The statute, however, did not define "work." That ambiguous silence required significant judicial intervention.  Early judicial interpretations of the FLSA (incorrectly) adopted an expansive conception of "work," holding that employees must be compensated for all time spent on the employer's premises, even if they were not engaged in productive work. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 693-94 (1946) (employer required its

employees to walk from a timeclock near the factory gate to a workstation so that they could begin their work), *superseded by statute, Portal–to–Portal Act of 1947.*

Not surprisingly, a flood of opportunistic "portal-to-portal" suits followed these decisions. Demonstrating its conclusion that the Supreme Court had interpreted the FLSA too expansively, Congress reacted swiftly by passing the Portal-to-Portal Act to abrogate the Supreme Court's interpretation of the FLSA's scope. As explained in 29 U.S.C. § 251(a), entitled "Congressional findings and declaration of policy," Congress enacted the Portal-to-Portal Act because "the Fair Labor Standards Act of 1938, as amended, has been interpreted judicially in disregard of long established customs, practices, and contracts between employers and employees[.]" The same section provides that, in light of the judicial interpretation given to the FLSA, it was "in the national public interest … that [the Portal-to-Portal Act] be enacted." The Portal-to-Portal Act clarified, among other things, that the FLSA did not render preliminary and postliminary activities compensable. *See* 29 U.S.C. § 252 (foreclosing suits seeking to recover wages for activities that were not explicitly stated in contract or that were not customarily compensated); 29 U.S.C. § 254 (clarifying that the workday does not include preliminary and postliminary activities). Demonstrating Congress's intent that preliminary and postliminary activities never were intended to be deemed compensable (thus counting toward overtime), Congress made clear that the Portal-to-Portal Act applied retroactively, wiping out all then-pending litigation claiming that such activities could provide the basis for overtime. 29 U.S.C. § 252(d).

Given this legislative history, the Supreme Court has made clear that the Portal-to-Portal Act amended the FLSA. *See, e.g., Busk,* 135 S. Ct. at 515 (describing the Portal-to-Portal Act as an amendment to the FLSA); *IBP, Inc. v. Alvarez,* 126 S. Ct. 514, 518 (2005) (describing the same). As the Sixth Circuit thereafter reaffirmed: the Portal-to-Portal Act was "**enacted as an**

**amendment to the FLSA**" in order to "narrow the coverage of the FLSA by excluding certain preliminary and postliminary activities from the FLSA's compensation requirements." *In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 852 F.3d 601, 607 (6th Cir. 2017)("*Vance*") (emphasis added). *See also Wilson v. PrimeSource Health Care of Ohio, Inc.*, 2017 WL 2869341, at *5 (N.D. Ohio July 5, 2017) ("A common dispute under the FLSA … is determining when the workday begins and ends. **Congress amended the FLSA twice to address this question, first with the Portal-to-Portal Act**[.]") (emphasis added).

In its 2014 *Busk* decision, the United States Supreme Court ruled that the security screening time at Amazon fulfillment centers is *not* compensable under the FLSA, as amended by the Portal-to-Portal Act. 135 S. Ct. at 519.  Thus, if Ohio follows the FLSA, as amended by the Portal-to-Portal Act, Plaintiffs' claim is not viable. As explained below, the Ohio legislature made crystal clear that the OMFWSA not only follows the FLSA, but also expressly incorporates the FLSA, "as amended."

### 2. Ohio Law Has Incorporated The Portal-to-Portal Act, Thus Disposing Of Plaintiffs' Claim Under Ohio Law.

Plaintiffs ask this Court to assume a sharp break between Ohio wage and hour law and the FLSA on whether time spent walking through security screening is compensable work. But no such break exists. Rather, Ohio has expressly incorporated the FLSA's overtime standards, principles, and definitions, "as amended," including the Portal-to-Portal Act.

The section under which Plaintiffs bring their sole claim, ORC 4111.03(A), states that an employer shall "pay an employee for overtime … in the manner and method provided in and subject to the exemptions of section 7 and section 13 of the 'Fair Labor Standards Act of 1938,' 52 Stat. 1060, 29 U.S.C.A. 207, 213, *as amended*." (Emphasis added).  The United States District Courts for the Northern and Southern Districts of Ohio, as well as the Court of Appeals for the

Sixth Circuit, have given this statutory language its plain meaning and uniformly held that "the Ohio [overtime] statute ***expressly incorporates the standards and principles found in the FLSA***." *Thomas v. Speedway SuperAmerica, LLC*, 508 F.3d 496, 501 (6th Cir. 2007) (emphasis added).

Simply put, Ohio's adoption of the FLSA's overtime provisions is unequivocal. Indeed, courts analyze Ohio state law overtime claims and FLSA claims concurrently, reasoning that the outcome under either law is invariably the same. *See Craig v. Bridge Bros. Trucking, LLC*, 823 F.3d 382, 385 n.1 (6th Cir. 2016) ("Because the FLSA and the OMFWSA have the same overtime requirements, the outcomes will be the same and the claims can be evaluated together."); *Thomas*, 508 F.3d at 501 ("Even though Thomas asserts an overtime claim under both federal and state law, we need consider only federal law on this issue"); *Heard v. Nielson*, 2017 WL 2426683, at *2 (S.D. Ohio June 2, 2017) ("Ohio law incorporates the FLSA's definitions, standards, and principles for its minimum wage and overtime compensation provisions…Accordingly, the claims may be analyzed together"); *Jelus v. All Creatures Animal Hosp., Inc.*, 2016 WL 3074406, at *1 & n. 1 (S.D. Ohio May 27, 2016) ("Ohio's statutory scheme expressly incorporates the FLSA, and courts interpret them in a unitary fashion"); *McCrimon v. Inner City Nursing Home, Inc*., 2011 WL 4632865, at *4 (N.D. Ohio Sept. 30, 2011) ("Because FLSA and OMFWSA have the same overtime provisions, courts evaluate these claims together").

Consistent with this unbroken line of authority, courts have applied the Portal-to-Portal Act to OMFWSA claims. For example, the plaintiffs in *Twaddle v. RKE Trucking Co.* were truckers who brought overtime claims under both Ohio law and the FLSA, alleging their employer required them to perform pre-shift tasks before clocking in, and did not compensate them for those tasks. 2006 WL 840388, at *5 (S.D. Ohio Mar. 29, 2006). These tasks included, among other things, arriving early to perform maintenance on trucks, and waiting at the dispatch office to receive

9

assignments.  *Id.*  In analyzing the plaintiffs' FLSA claims, the court noted that the "Portal to Portal Act, which **amends the FLSA**, modified [the FLSA's definition of work] to exclude from compensation activities that are 'preliminary or postliminary' to [the] principal activity or activities." *Id.* at *6 (emphasis added).  The court then applied the Portal-to-Portal analysis to the plaintiffs' pre-shift activities to determine whether each was "integral and indispensable" to a principal activity, and thus compensable under the FLSA.  Thereafter, the court turned to the plaintiffs' state law claims.  Noting that ORC 4111 had incorporated the FLSA, the court explained "Plaintiffs' claim under 4111 is indistinguishable from the FLSA claim … Thus the Court's rulings with respect to the FLSA claim apply also to Plaintiffs' claims under § 4111." *Id.* at *13.  In short, the court held that the Portal-to-Portal Act applied ***equally*** to the plaintiffs' federal and state overtime claims, and its state law analysis ended there.

The court followed the same analysis in *Lacy v. Reddy Elec. Co.*, 2013 WL 3580309 (S.D. Ohio July 11, 2013).  The *Lacy* plaintiffs were electrical workers who alleged they were not compensated for pre-shift work, including using company-owned vehicles to drive to job sites and time spent loading and unloading tools and other materials.  *Id.* at *2.  The plaintiffs sued under the FLSA and Ohio law on a number of theories, including failure to pay overtime.  Once again, the court noted that the FLSA and OMFWSA were "governed by the same standards," and analyzed both claims together. *Id.* at *5.  The court applied the Portal-to-Portal Act to both the Ohio and federal claims to determine whether the pre-shift time spent traveling to the job sites and loading/unloading tools was compensable. *See also Wilson*, 2017 WL 2869341, at *5 (applying Portal-to-Portal Act to OMFWSA and FLSA claims concurrently).

Despite this on-point case law, Plaintiffs allege that their Ohio state law claim is viable because the Portal-to-Portal Act is "separate" from the FLSA.  Compl. ¶ 43.  Most prominently,

Plaintiffs point to the Sixth Circuit's decision in *In re: Amazon.Com, Inc. Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 905 F.3d 387 (6th Cir. 2018) ("*Busk* II"), which held that *Arizona* and *Nevada's* wage and hour statutes had not incorporated the Portal-to-Portal Act.  Plaintiffs assert without justification that the same should hold true for Ohio. The *Busk* II decision, however, is inapposite.

In *Busk* II, the Sixth Circuit examined Arizona and Nevada's wage and hour statutes. Critically, neither statute expressly "incorporated" the FLSA "as amended." Rather, both state statutes contain a framework of wage and hour rules and regulations that track the FLSA in some regards, but depart from it in other ways. In deciding whether Arizona and Nevada had incorporated the Portal-to-Portal Act, the Sixth Circuit noted that, as a federal court applying state law, it was required to "anticipate how the … state's highest court would rule" as to the issue. 905 F.3d at 395. The Sixth Circuit then observed that while both Arizona and Nevada had a robust framework of wage and hour laws, neither had enacted any "'portal-to-portal like' statutes, regulations, or constitutional amendments[.]" *Id.* at 403-05. Accordingly, because there was "nothing to suggest" that Arizona and Nevada "intended to adopt the Portal-to-Portal Act," the court declined to "read-in such a significant statute by inference or implication." *Id.* at 405. In other words, the Sixth Circuit predicated its decision in *Busk* II on Arizona and Nevada's legislative and judicial silence as to the Portal-to-Portal Act.  In Ohio, the opposite posture exists– the Ohio legislature enacted the OMFWSA in 1974 with the express intention of "incorporating" the FLSA "as amended." If anything, therefore, *Busk* II only underscores that Plaintiffs' Ohio claim fails as a matter of law.

A far more instructive case is *Vance*, in which the Sixth Circuit held that Kentucky's wage and hour statute *does* incorporate the Portal-to-Portal Act, even though the Kentucky statute

(unlike ORC 4111.03) is silent on the issue.  852 F.3d at 615.  The court in *Vance* observed that Kentucky's wage and hour statute was "substantially similar" to the FLSA, noting that the two statutes contained "nearly identical" overtime requirements, and defined several wage and hour terms using "comparable language." *Id.* at 610.  The court then cited Kentucky's rule of statutory construction that laws which are "similar to a Federal Act . . . will normally be interpreted consistent with federal law." *Id.*, citing *Starr v. Louisville Graphite, Inc.*, 2006 WL 1612940, at *3 (Ky. Ct. App. Apr. 22, 2016).  This interpretive rule, paired with Kentucky regulations that resembled the Portal-to-Portal regulations, led the Sixth Circuit to conclude the Kentucky Supreme Court "would agree that the KWHA incorporates the Portal-to-Portal Act's compensation limits on preliminary and postliminary activities." *Id.*

The connection between Ohio law and the FLSA is even stronger here. The two laws do not merely contain "comparable" or "similar" language.  Rather, the OMFWSA incorporates the FLSA's standards and definitions altogether.  Put another way, the Sixth Circuit in *Vance* held that Kentucky followed the FLSA even when the underlying state statute was silent.  It is inconceivable that it would rule otherwise here, where the OMFWSA expressly *directs* courts to apply Ohio's overtime rules "in the same manner and methods provided in" the FLSA. ORC 4111.03(A).[2]

---

[2]     Even if the OMWFSA were ambiguous on this point (and it is not), the Ohio canons of statutory construction present compelling proof that Ohio law follows the Portal-to-Portal Act.  Ohio adheres to the same rule of statutory construction upon which the Sixth Circuit relied in *Vance*, namely that "[w]hen a state statute is modeled on [a] parallel statute[], judicial interpretations of those federal provisions may be considered as persuasive authority in determining the meaning of comparable Ohio laws." *Stancourt v. Worthington City School Dist. Bd. of Edn.*, 841 N.E. 2d 812, 822 (Ohio Ct. App. 2005). *See also Covington v. HKM Direct Market Comms., Inc.*, 2003 WL 22784378, at *2 (Ohio Ct. App. 2003) ("The Ohio Liquidation Act was modeled after the Federal Bankruptcy Act . . . accordingly, this court looks to federal bankruptcy law as an aid to interpreting the Ohio statutes."); *State v. Stevens*, 11 N.E.3d 252, 264 (Ohio 2014) (looking to federal law to interpret Ohio's RICO statute); *Carnahan v. Morton Bldgs. Inc*., 41 N.E.3d 239,  243 (Ohio Ct. App. 2015) ("Since Ohio's disability discrimination statute is similar to the Federal Americans with Disabilities Act . . .we can look to federal cases for guidance in interpreting the Ohio statute"). This principle of statutory interpretation, paired with Ohio's express incorporation of the FLSA's overtime requirements, leaves no doubt that Ohio has adopted the Portal-to-Portal Act.

In light of this authority, Plaintiffs' allegation that Ohio has not incorporated the Portal-to-Portal Act because the Ohio overtime law does not "reference" it,[3] Compl. ¶44, quickly unravels. Plaintiffs' argument, apparently, is that Ohio law diverges from the FLSA in any instance where it lacks an overt reference to the FLSA.  In fact, a review of the OMFWSA and cases interpreting it demand the opposite conclusion–Ohio law follows the FLSA absent an affirmative departure from the FLSA.

"Courts have uniformly held that Ohio's wage and hour law should be interpreted in accordance with the FLSA." *Bey v. WalkerHealthCareIt, LLC*, 2018 WL 2018104, at *7 (S.D. Ohio May 1, 2018). Indeed, courts have observed that the OMFWSA "contains requirements *identical* to those in the FLSA and incorporates the procedures and standards contained therein." *Kollstedt v. Princeton City Sch. Bd. of Educ.*, 2010 WL 597825, at *9 (S.D. Ohio Feb. 17, 2010) (emphasis added).  It is thus hardly surprising that, as detailed above, courts have long treated it as a foregone conclusion that Ohio law incorporates the Portal-to-Portal Act. *See supra* at 9-10. (reviewing cases in which courts have applied the Portal-to-Portal Act to Ohio claims).

The provision under which Plaintiffs assert their claim, ORC 4111.03, including the statutory language incorporating the FLSA "as amended," was enacted in 1974–almost 30 years after the Portal-to-Portal Act amended the FLSA. "[S]tatutes are construed by the courts with reference to the circumstances existing at the time of the passage." *United States v. Wise*, 370 U.S. 405, 411 (1962).  It defies reason that the Ohio legislature (and subsequently Ohio courts) would have incorporated the FLSA's "standards and definitions," but also had intended to depart from

---

[3]     Plaintiffs' Complaint also makes the unremarkable observation that the Portal-to-Portal Act is contained in chapter 9 of Title 29 of the United States Code, while the FLSA's overtime provisions are contained in chapter 8 of Title 29 of the United States Code. Compl. ¶ 43. Plaintiffs do not explain why this should affect the Court's analysis.  As demonstrated above, Plaintiffs' position is fatally undermined by the FLSA's legislative history and Sixth Circuit precedent.

the FLSA with respect to the most critical aspect of the FLSA–the definition of what is compensable work time.  *Cf. Vance*, 852 F.3d at 612 (noting that the Kentucky legislature "drafted the KWHA in 1974, decades after congress enacted the 1947 Portal-to-Portal Act . . . [A]bsent a clear indication that the General Assembly considered the revision and deliberately rejected it . . . legislative inaction is a weak reed upon which to lean, and a poor beacon to follow in construing a statute that borrows some, but not all of a model act's provisions") (citations omitted).

Indeed, it is telling that Ohio has neglected to implement *any* regulations concerning the OMFWSA's overtime provisions.  By incorporating the FLSA's definitions and standards, it obviated the need for such regulations.  Instead, courts analyzing claims under the OMFWSA look to the FLSA's regulations for guidance.  *See, e.g., Haas v. Behr Dayton Thermal Prods.*, 2008 WL 11351383, at *8 (S.D. Ohio Dec. 22, 2008) (applying the FLSA's regulations concerning administrative and executive employees to Ohio state law claims); *Jelus*, 2016 WL 3074406, at *3 (applying the FLSA's regulations concerning the "regular rate" of pay to Ohio state law claims).  Ohio's total regulatory silence on the subject of overtime is compelling evidence that Ohio intended to follow the FLSA's overtime procedures and methods in all respects.[4]  Given the Ohio legislature's adoption of the FLSA's "definitions, standards, and principles," it would be redundant for the OMFWSA to also codify them all one-by-one.

---

[4]     The only instances in which the OMFWSA departs from the FLSA is when the two laws demonstrate an actual conflict.  For instance, courts have observed that the FLSA and OMFWSA provide different remedies.  *Compare* 29 U.S.C. § 216(b) (providing liability for back pay plus an additional amount of liquidated damages) *with* ORC 4111.10(A) (providing for the recovery of unpaid wages but not liquidated damages).  Accordingly, courts have observed, "[a]lthough the FLSA and Ohio law use the same standards to determine liability, the laws provide different measures of damages." *Heard*, 2017 WL 2426683, at *4. *See also Bey*, 2018 WL 2018104, at *7 (noting the same). Here, on the other hand, the OMFWSA contains no divergence from the Portal-to-Portal amendments and thus they apply to OMFWSA claims. *Cf. Vance*, 852 F.3d at 612 ("If the Kentucky General Assembly intended to expose employers to the type of liability Congress foreclosed in the Portal-to-Portal Act, one may reasonably assume it would have done so affirmatively—especially given its willingness to affirmatively depart from the FLSA in other instances").

In essence, Plaintiffs ask this Court to read Ohio's purported statutory silence on the applicability of the Portal-to-Portal amendments as equivalent to an explicit rejection of the FLSA. Putting aside that the statute actually expressly incorporates all FLSA amendments into Ohio law, the case law requires the opposite conclusion: absent an explicit statutory rejection of the FLSA (which does not exist), Ohio follows the FLSA, "as amended."  Accordingly, Plaintiffs' claim related to post-shift security screening is not viable under Ohio law, and should be dismissed.

### C. Any Time Spent Passing Through Security Screening During Meal Breaks Is Not Compensable Because Amazon Does Not "Require" Any Employee To Do So.

Plaintiffs also allege that any time spent passing through security screening prior to taking their meal breaks is compensable work that counts toward overtime. Compl. ¶20. Plaintiffs are incorrect.  Amazon does not require any employee to pass through screening during their meal breaks.  Plaintiffs do not allege otherwise, nor could they, because all CLE2 employees are free to take their meal breaks in on-site break room facilities provided by Amazon, completely free from all work responsibilities, without having to pass through any form of security.  Answer ¶ 20.

Under the FLSA, "as long as the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer's benefit, the employee is relieved of duty and is not entitled to compensation[.]" *Hill v. U.S.*, 751 F.2d 810, 814 (6th Cir. 1984).  It is only when "an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Ruffin*, 775 F.3d at 812.

Amazon meets this standard with three on-site, *inside-security* break rooms. Answer ¶ 20. As noted above, these break rooms contain food and drink, vending machines, ample seating, and several other amenities. *Id.*  Plaintiffs do not dispute that during their meal periods, they were

relieved of all work duties; their claim appears to be that Amazon should compensate them for the time spent going through security when they *chose* to take their lunch elsewhere.

Neither Plaintiffs nor any other employee, however, can convert a meal break into compensable time by choosing to shorten it–whether by passing through security screening or otherwise.   Indeed, the Sixth Circuit has firmly held that even requiring employees to remain on site during a meal break does not convert the break time into compensable time. *Ruffin*, 775 F.3d at 814 ("[I]t is not so much the employee's inability to leave the premises that indicates who predominantly benefits from the meal period, but rather whether the employer takes advantage of the employee's presence on the premises by making her work during a nominal meal period … Despite being stuck at the [workplace], plaintiffs spent their meal periods doing exactly what one might expect an off-duty employee to be doing on a meal break"). *See also Jones-Turner v. Yellow Enter. Sys., LLC*, 597 F. App'x 293, 297 (6th Cir. 2015) (requiring employees to take their lunch within one mile of assigned work location did not render meal break time compensable).   Here, Amazon does not "require" that its employees pass through security or perform any work during their lunch period.   Accordingly, Plaintiffs' claim for overtime derived from passing through security before meal breaks fails.

> **D.      Plaintiffs' Complaint Fails To State A Claim Because Passing Through Security Screening Involves No Exertion And Therefore Is Not "Work."**

Although the foregoing arguments suffice to reject Plaintiffs' claims, those claims also fail for an independent fundamental reason–time spent walking through security is not "work" that must be counted toward overtime.   Specifically, Plaintiffs do not and cannot plead that the activity of walking through security requires any level of exertion.   Because "work" must involve exertion under the FLSA and thus Ohio law (absent the specific exception of an "engaged to wait" scenario), the Court should enter judgment against Plaintiffs' claim.

The basic definition of "work" under the FLSA comes from the Supreme Court's judicial interpretation in *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944).  In that case, the Court defined "work" as "***physical or mental exertion*** (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." (Emphasis added) (most recently reaffirmed in *Busk*, 135 S. Ct. at 517); *see also Anderson*, 328 U.S. at 691-92 (adhering to *Tennessee Coal* definition of "work").  As the *Tennessee Coal* decision also made clear, an employee is working only if "engaged in work *necessary to production*."  321 U.S. at 599 (emphasis added).  Thus, it is axiomatic that "not all work-related activities constitute 'work or employment' that must be compensated." *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 589 (2d Cir. 2007).

The Sixth Circuit has recognized that exertion remains an essential condition for an activity to amount to "work." *See Ruffin*, 775 F.3d at 811 (quoting and applying *Tennessee Coal*'s definition of work as requiring "exertion"); *Chao v. Akron Insulation & Supply, Inc.*, 184 F. App'x 508, 510 (6th Cir. 2006) (same); *Brock v. City of Cincinnati*, 236 F.3d 793, 800-01, 803 (6th Cir. 2001) (quoting *Tenn. Coal*, and noting that "the court must …measure, if possible, how much time the [plaintiffs] spent on **exertions** [the employer] either required or suffered") (emphasis added); *Bania v. Ford Motor Co.*, 1992 WL 214522, at *2 (6th Cir. Sept. 2, 1992) (quoting *Tennessee Coal* definition of "work").[5]

The only exception to the exertion requirement is the so-called "engaged to wait" scenario, which is not applicable here. Specifically, in *Armour & Co. v. Wantock*, the Supreme Court

---

[5]    The Sixth Circuit in *Busk* II held, contrary to decades of precedent, that "work" does not require "exertion" under the FLSA.  905 F.3d at 400.  In doing so, the Sixth Circuit did not address or distinguish its own prior decisions cited above that reaffirmed the exertion requirement.  In any event, the Sixth Circuit's *Busk* decision was wrongly decided.  As explained above, the only exception to the exertion requirement (not applicable here) exists if an employee is "engaged to wait."  This exception does not, as the Sixth Circuit held in *Busk*, swallow the general rule that work requires exertion.

identified the engaged-to-wait scenario as a "limitation" of the general exertion requirement.  323 U.S. 126, 133 (1944).  *Armour* stands for the non-controversial proposition–not at issue here–that employees who are "engaged to wait," may be compensated for non-exertive activities because, in those cases, that was the very purpose of their employment.  As the *Tennessee Coal* case noted, exertion is a requirement under the FLSA except where standing idle in capacities such as "guarding a building, *waiting for work*, and standing by on call" are "necessary to production." *Tenn. Coal.*, 321 U.S. at 599 (emphasis added).  There is no suggestion in *Armour* that the Supreme Court eliminated the "exertion" requirement.[6]  Here, employees passing through security are not waiting for potential assignment; rather, they are in the process of *leaving* the premises and have commenced their travel home.  This is not "work" within the meaning of the FLSA.

The district court in *Vance*, considering virtually identical security screening allegations at another Amazon fulfillment center, recognized that the engaged-to-wait exception does not swallow the long-established rule that exertion is generally required for an activity to amount to "work." *In re Amazon.com, Inc.*, 2016 WL 1268296, at *3 (W.D. Ky. Mar. 31, 2016).  In similarly entering judgment on the pleadings against the plaintiffs pursuant to Rule 12(c), the court observed:

> Though the Court agrees that there certainly are jobs where waiting is an integral part of the work, the Court disagrees that this case presents such a job.  Jobs like firefighting and stenography have necessary down periods.  And so, workers who have those types of jobs are compensated to wait:  They are paid to be on call so that, when the primary tasks they are paid to do arise, they will be available to do the work that needs to be done.  Here, though, the

---

[6]    Nor did the Supreme Court in *Armour* suggest that it had overruled *Tennessee Coal* (decided by the same panel of justices only 9 months earlier) without saying it was doing so, especially where subsequent decisions have repeatedly reaffirmed *Tennessee Coal*'s exertion requirement.  *See, e.g.*, *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers*, 325 U.S. 161, 163-66 (1945); *Anderson*, 328 U.S. at 691-92.  Indeed, the Supreme Court "does not normally overturn … earlier authority *sub silentio*." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2018); *see also Rayner v. Mills*, 685 F.3d 631, 638-39 & n.6 (6th Cir. 2012) ("If the [Supreme] Court intended to overrule prior decisions … it surely would have said so  directly, rather than act in such an ambiguous manner.") (citations omitted).

> workers are not being paid to wait around for their next task.  These workers have already completed their tasks for the day—the jobs they are paid for—and are just waiting to go home.

*Id.*

Plaintiffs have not averred–nor can they–that their time spent in security screening involved "exertion" associated with their performance of "productive activities."  The fact is that everyone must walk out of the fulfillment center at the end of the shift.  At the time Amazon employees walk through security to exit the facility, they have completed all their work duties, and the only "exertion" remains the passive acts of walking out (which they must do anyway) and, perhaps, briefly waiting.  *See Reich v. IBP, Inc.*, 38 F.3d 1123, 1125-26 & n.1 (10th Cir. 1994) (holding that donning and doffing standard safety equipment was "not work" under the *Tennessee Coal* test because it involved no material physical or mental exertion and thus was "not work at all").  As exertion is a *sine qua non* of work under the FLSA (and thus Ohio law), this Court can and should dismiss Plaintiffs' claim for failure to plead exertion.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter judgment against Plaintiffs on all claims described herein.

19

DATED:  October 11, 2019                Respectfully submitted,


                                        By: *s/ Andrew J. Barber*
                                        _____
                                            Andrew J. Barber (OH ID No. 0091160)
                                            andrew.barber@morganlewis.com
                                            Morgan, Lewis & Bockius LLP
                                            One Oxford Centre, 32nd Fl.
                                            Pittsburgh, PA 15219-6401
                                            Tel: (412) 560-3300
                                            Facsimile: (412) 560-7001

                                            Sari M. Alamuddin (admitted *pro hac vice*)
                                            sari.alamuddin@morganlewis.com
                                            Joseph A. Nuccio (admitted *pro hac vice*)
                                            Joseph.nuccio@morganlewis.com
                                            Kevin F. Gaffney (admitted *pro hac vice*)
                                            kevin.gaffney@morganlewis.com
                                            Gabriel Shechter (admitted *pro hac vice*)
                                            gabriel.shechter@morganlewis.com
                                            Morgan, Lewis & Bockius LLP
                                            77 West Wacker Drive, Fifth Floor
                                            Chicago, IL 60601
                                            Tel: (312) 324-1000
                                            Facsimile: (312) 324-1001.

                                            *Attorneys for Defendants, Amazon.Com Services, Inc.*
                                            *and Amazon.com, Inc.*

## **CERTIFICATE OF COMPLIANCE**

This case has not yet been assigned to a track. This memorandum complies with the applicable page limitations under LR 7.1(f) because it does not exceed 20 pages, the page limitation for dispositive motions in unassigned and standard track cases.

*/s/ Andrew J. Barber*
Andrew J. Barber

## CERTIFICATE OF SERVICE

I, Andrew J. Barber, an attorney, hereby certify that on October 11, 2019, I electronically filed a copy of Defendants' Memorandum in Support of Their Motion for Judgment on the Pleadings through the Court's CM/ECF filing system, which will transmit notice of such filing to all counsel of record.

*/s/  Andrew J. Barber*
Andrew J. Barber