IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SAVON THOMAS and COLLEEN E. MCLAUGHLIN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> AMAZON.COM SERVICES, INC., et al. <br><br> Defendants. | Case No. 1:19-cv-01696 <br><br> Judge Pamela A. Barker <br><br><br><br><br> **<u>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS</u>** |

**I.    Summary of Argument.**

This case turns on the issue of whether Ohio's Minimum Wage Fair Standards Act (the "OMWFSA") incorporates the Federal Portal-to-Portal Act. Although this precise question has not yet been answered as it relates to Ohio law, the Sixth Circuit Court of Appeals has considered the same issue as it relates to other state wage and hour laws. Most recently, in *Busk v. Integrity Staffing Sols., Inc. (In re Amazon.com, Inc.)*, 905 F.3d 387 (6th Cir. 2018), the Sixth Circuit decided this issue as it pertains to the state wage and hour laws of Nevada and Arizona. In so doing, the Sixth Circuit reaffirmed that the correct analysis for determining whether the federal law is incorporated into the relevant state statute is guided by the respective state's rules of statutory interpretation.

Defendants' Motion fails as it brazenly departs from the controlling analysis as reaffirmed in *Busk*. In fact, Defendants' Motion contains numerous arguments that were specifically addressed and rejected by the Sixth Circuit in *Busk*. Thus, those same arguments should be rejected once again here. Contrary to Defendants' arguments, the proper analysis as set forth in *Busk* can only lead to the conclusion that the OMWFSA did not incorporate the Portal-to-Portal Act.

Accordingly, the arguments set forth in Defendants' Motion are unavailing in their entirety, and Defendant's Motion should be denied.

**II.     Relevant Factual Allegations.**

Plaintiffs were hourly, non-exempt employees of Defendants who regularly worked in excess of 40 hours per workweek. (Complaint at ¶¶ 6,7). Defendants required Plaintiffs and similarly situated co-workers to undergo a mandatory screening process prior to exiting their Ohio Fulfillment Centers at the end of their shifts. (*Id.* at ¶¶19). The security screening process required employees to first to line up at a security screening area and wait for the screening to begin, then to proceed through a metal detector, and finally to participate in an inspection of all bags and personal items the employee is carrying. (*Id.* at ¶¶ 21-24). The security screening process routinely took 10-20 minutes, and often took longer. (*Id.* at ¶¶ 27).

Defendants also required employees to proceed through the same mandatory screening process prior to taking their lunch breaks. (*Id.* at ¶ 20). This resulted in employees engaging in screening for a significant portion of their unpaid lunch break. (*Id.* at ¶¶ 20, 27-29). Defendants failed to pay Plaintiffs and their similarly situated co-workers for the time spent going through Defendants' mandatory screening process at the end of their shifts and during lunch breaks, resulting in unpaid overtime in violation of the OMWFSA. (*Id.* at ¶¶ 39-53).

**III.    Law and Argument.**

**A.     Standard of Review.**

Federal Rule of Civil Procedure 12(c) provides: "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review for a motion for judgment on the pleadings is the same as the standard applicable to a motion to dismiss under Rule 12(b)(6). *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir.

2006). In ruling on "a Rule 12(c) motion, the court considers all available pleadings, including the complaint and the answer." *Turk v. Oiler*, 732 F. Supp. 2d 758, 764 (N.D. Ohio 2010). In considering a Rule 12(c) motion, "courts must 'view the complaint in the light most favorable to the plaintiff, accepting as true all plausible well-pled factual allegations, and drawing 'all reasonable inferences' in favor of the plaintiff." *Barrio Bros., LLC v. Revolucion, LLC*, 2019 U.S. Dist. Lexis 179092, *7-8 (Barker, J.) (quoting *Kinney v. Anderson Lumber Co., Inc.*, No. 18-5146, 2018 U.S. App. LEXIS 26102 at *4 (6th Cir. Sept. 13, 2018) and *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 464 (6th Cir. 2013)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

     **B.**     **Controlling Sixth Circuit Precedent as Set forth in *Busk v. Integrity Staffing (In re Amazon.com, Inc.)* Compels Denial of Defendants' Motion.**

In *Busk*, the Sixth Circuit held that Amazon's mandatory security screening time is compensable under the wage and hour statutes of Nevada and Arizona, and the Supreme Court recently denied the ensuing writ of certiorari. 905 F.3d at 404-405; *Writ of Certiorari Denied* by *Integrity Staffing Sols., Inc. v. Busk*, 2019 U.S. Lexis 4668, 205 L. Ed. 2d 25 (Oct. 7, 2019). In *Busk*, just as here, the ultimate issue of whether mandatory security screening time was deemed compensable turned on the determination of whether the FLSA's Portal-to-Portal Act was incorporated into the relevant state wage and hour law. Accordingly, *Busk* is directly on point and its analysis is dispositive here. *Busk* is also instructive as many of the same arguments rejected by the Sixth Circuit in *Busk* have been recycled in Defendants' Motion here, and can therefore summarily be rejected.

In considering the issues under Nevada and Arizona law, the Sixth Circuit reasoned that, pursuant to well settled precedent, when a federal court sits in the position of applying state law, the court "anticipate[s] how the relevant state's highest court would rule in the case and are bound

by controlling decisions of that court." *Busk*, 905 F.3d at 405 (6th Cir. 2018) quoting *Vance v. Amazon*, 905 F.3d 387, 395 (6th Cir. 2018) and *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005)). When, as here, "the state supreme court has not yet addressed the issue,' we render a prediction 'by looking to all the available data.'" *Id.* (quoting *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). Sources of relevant data include the decisions (or dicta) of the state's highest court in analogous cases, pronouncements from other state courts, and regulatory guidance." *Id.* Accordingly, the Sixth Circuit looked to rules of statutory construction as defined by each respective state's highest court.

As the Sixth Circuit noted in *Busk*, both Nevada and Arizona maintain rules of statutory construction requiring the plain language of statute to be applied. *See Busk*, 905 F.3d 387, 397-398 (6th Cir. 2018) citing to *Salas v. Allstate Rent-A-Car, Inc.*, 116 Nev. 1165, 14 P.3d 511, 513 (Nev. 2000) (citing *Cleghorn v. Hess*, 109 Nev. 544, 853 P.2d 1260, 1262 (Nev. 1993)) for Nevada; and *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 869 P.2d 500, 503 (Ariz. 1994) (citing *Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991)) for Arizona.

Turning to a review of the relevant statutes, the Sixth Circuit noted that Nevada and Arizona both incorporated only portions of the FLSA or its regulations. *Busk*, 905 F.3d at 402-405. In so doing, however, neither the Nevada legislature nor Arizona legislature incorporated the portions of the FLSA comprising the Portal-to-Portal Act. *Id.* Thus, the Sixth Circuit held "because there is no reason to believe that the Nevada legislature intended to adopt the Portal-to-Portal Act, we are reluctant to infer an entirely unsupported legislative intent." *Id.* at 404. The Court similarly rejected the employers' argument with respect to Arizona, holding "we refuse to read-in such a significant statute by inference or implication." *Id.* at 405.

Here, as was the case in *Busk*, the Ohio Supreme Court's rules of statutory construction are dispositive. Notably, Ohio's rules of statutory construction are in accord with the rules of Arizona as well as Nevada. As the Ohio Supreme Court explained in *State v. Lowe*, "[T]he primary goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute." 112 Ohio St. 3d 507, 508 (2007), citing *Brooks v. Ohio State Univ.*, 111 Ohio App.3d 342, 349 (1996). Notably, the "court must first look to the plain language of the statute itself to determine the legislative intent." *Id.* (emphasis added) citing *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81, (1997). Accordingly, ***"[a]n unambiguous statute must be applied in a manner consistent with the plain meaning of the statutory language. Id.*** (emphasis added) citing *State ex rel. Burrows*, 78 Ohio St.3d at 81.

Turning to the relevant statutory language, the OMFWSA, at R.C. 4111.03(A) provides that an "employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, ***in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the "Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. 207, 213, as amended.***" (emphasis added).

Notably, the OMFWSA's statutory text references various "sections" of the FLSA, found at 29 U.S.C. §§ 201 through 219. Section 7 of the FLSA, found at 29 U.S.C. § 207, largely addresses such issues as how to calculate a "regular rate" for overtime purposes, as well as the methods for computing piece-rate workers' pay. It also requires that new mothers be provided time and space to express breast milk. Section 13 of the FLSA, found at 29 U.S.C. § 213, describes certain professions that are not subject to the FLSA, such as white-collar executives,

administrators, and salespersons. Indeed, these white-collar exemptions are the same exemptions expressly incorporated by reference by Nevada law. *See* Nevada Revised Statutes 680.060(3).

Sections 7 and 13 of the FLSA have been amended on many occasions since the FLSA's passage in 1938.[1] Neither Section 7 nor Section 13, however, were amended in 1947 when congress passed the Portal-to-Portal Act. The Portal-to-Portal Act is not codified in Sections 7 and 13, but rather at 29 U.S.C. §§ 251-259. Significantly, the Portal-to-Portal Act excluded "preliminary and postliminary activities" from compensable time worked. *See* 29 U.S.C. §§ 252, 254. In addition, the Portal-to-Portal Act provides additional worker protections at 29 U.S.C. § 255(a) in the form of a three-year statute of limitations for willful violations of the FLSA.

Ohio's rules of statutory construction require when, as here, a statute is unambiguous, the plain meaning of the statute controls. R.C. 4111.03(A) unequivocally refers to and provides pinpoint cites to only sections 7 and 13 of the FLSA. This language unambiguously refers to 29 U.S.C. 207 (and the 10 amendments made since its passage) and 29 U.S.C. 213 (and the 21

---

[1] Section 7 of the FLSA was amended on 10 occasions. *See* Oct. 29, 1941, ch 461, 55 Stat. 756; July 20, 1949, ch 352, § 1, 63 Stat. 446; Oct. 26, 1949, ch 736, §§ 7, 16(f), 63 Stat. 912, 920; May 5, 1961, P. L. 87-30, § 6, 75 Stat. 69; Sept. 23, 1966, P. L. 89-601, Title II, §§ 204(c), (d), 212(b), Title IV, §§ 401–403, 80 Stat. 835–837, 841, 842; April 8, 1974, P. L. 93-259, §§ 6(c)(1)(A), 7(b)(2), 9(a), 12(b), 19(a)–(c), 21(a), 88 Stat. 60, 62, 64, 66, 68; Nov. 13, 1985, P. L. 99-150, §§ 2(a), 3(a), (b), (c)(1), 99 Stat. 787, 789; Nov. 17, 1989, P. L. 101-157, § 7, 103 Stat. 944; Sept. 6, 1995, P. L. 104-26, § 2, 109 Stat. 264; May 18, 2000, P. L. 106-202, § 2(a), (b), 114 Stat. 308; March 23, 2010, P. L. 111-148, Title IV, Subtitle C, § 4207, 124 Stat. 577

Section 13 of the FLSA was amended on 21 occasions. *See* Aug. 9, 1939, ch 605, 53 Stat. 1266; Oct. 26, 1949, ch 736, § 11, 63 Stat. 917; Aug. 8, 1956, ch 1035, § 3, 70 Stat. 1118; Aug. 30, 1957, P. L. 85-231, § 1(1), 71 Stat. 514; July 12, 1960, P. L. 86-624, § 21(b), 74 Stat. 417; May 5, 1961, P. L. 87-30, §§ 9, 10, 75 Stat. 71, 74; Sept. 23, 1966, P. L. 89-601, Title II, §§ 201–204(b), 205–212(a), 213, 214, 215(b), (c), 80 Stat. 833–838; Oct. 15, 1966, P. L. 89-670, § 8(e), 80 Stat. 943; June 23, 1972, P. L. 92-318, Title IX, § 906(b)(1), 86 Stat. 375; April 8, 1974, P. L. 93-259, §§ 6(c)(2), 7(b)(3), (4), 8(a), 9(b), 10(a), (b)(1), 11(a), 12(a), 13(a), 14, 15(a), 16(a), (b), 17, 18, 20(a), (b)(1), (b)(2), (c)(1), (c)(2), 21(b)(1), 22, 23, 25(b), 88 Stat. 61–69, 72; Nov. 1, 1977, P. L. 95-151, §§ 4–8, 9(d), 11, 14(a), (b), 91 Stat. 1249–1252; Sept. 27, 1979, P. L. 96-70, Title I, ch 2, Subch II, § 1225(a), 93 Stat. 468; Nov. 17, 1989, P. L. 101-157, § 3(c), 103 Stat. 939; Sept. 30, 1994, P. L. 103-329, Title VI, § 633(d), 108 Stat. 2428; Dec. 29, 1995, P. L. 104-88, Title III, Subtitle B, § 340, 109 Stat. 955; Aug. 6, 1996, P. L. 104-174, § 1, 110 Stat. 1553; Aug. 20, 1996, P. L. 104-188, Title II, § 2105(a), 110 Stat. 1929; Nov. 13, 1997, P. L. 105-78, Title I, § 105, 111 Stat. 1477; Oct. 31, 1998, P. L. 105-334, § 2(a), 112 Stat. 3137; Jan. 23, 2004, P. L. 108-199, Div E, Title I, § 108, 118 Stat. 236; Dec. 18, 2014, P. L. 113-277, § 2(g)(2), 128 Stat. 3005; March 23, 2018, P. L. 115-141, Div S, Title II, § 201(a), 132 Stat. 1126.

amendments made since its passage). It does not, by any stretch of the imagination, include the Portal-to-Portal Act.

Defendants want the Court to read the entrails of Ohio's overtime statute to find a hidden intent to incorporate the Portal-to-Portal Act. The Court should decline this invitation to incantation. As held by the Sixth Circuit: "Absent any affirmative indication that…the legislature intended to adopt the Portal-to-Portal Act, there is no reason to assume that it did." *Busk*, 905 F.3d at 402. Here, there is no mention of the Portal-to-Portal Act in Ohio's overtime law. Thus, *Busk* compels a finding that the Portal-to-Portal Act was not incorporated by the OMWFSA.

>    C.  **Defendants' Argument Overlooks the Numerous Distinctions Between the FLSA and the OMWFSA.**

Defendants argue that R.C. 4111.03(A)'s use of the words "as amended" does not simply refer to the amendments relevant to sections 7 and 13 of the FLSA, but that inclusion of the words "as amended" evidently results in the inclusion all amendments to the FLSA, including the Portal-to-Portal Act. Aside from requiring a blatant departure from the statute's plain meaning, Defendants' argument fails for the additional reason that it overlooks the numerous differences between the FLSA and the OMWFSA that would not exist if Defendants' interpretation were correct.

While similar in some respects, Ohio's overtime statute does not incorporate "all of the overtime standards, principles, and definitions set forth in the FLSA," as repeatedly (and incorrectly) claimed by Defendants. There are many differences between the FLSA and Ohio's overtime statute. As one example, 29 U.S.C. 216(b) of the FLSA establishes an "opt-in" process for asserting claims collectively. An extensive body of law has evolved around this procedure, including the familiar two-step conditional certification process. *See, e.g., Slaughter v. Lincoln*

*Elec. Co.*, 2019 U.S. Dist. LEXIS 173762 (N.D. Ohio Oct. 7, 2019) (Barker, J.). None of these extensive and widely adopted "standards, principles, and definitions" of the FLSA, however, apply to Ohio's overtime statute. This is because the Ohio legislature decided not to adopt the FLSA's opt-in collective procedure. Rather, class-wide violations of Ohio law must be brought pursuant to Rule 23, as this case was.

The differences between Ohio's overtime law and the Portal-to-Portal Act are even more striking. None of the Portal-to-Portal Act's provisions, standards, principles, or definitions appear in Ohio's overtime law. Indeed, they often expressly conflict. The words "preliminary" and "postliminary" appear nowhere in Ohio's overtime statute, although they are key to the purpose of the Portal-to-Portal Act. Neither do such words appear anywhere in any of the Ohio overtime statute's implementing administrative code provisions. The Portal-to-Portal Act itself is not mentioned by name anywhere in Ohio's overtime law.

Further evidence that failing to incorporate the Portal-to-Portal Act was not mere oversight is that the Portal-to-Portal Act's statute of limitations and liquidated damages provisions are clearly not part of the Ohio overtime statute. Indeed, the limitations period and liquidated damages provisions of the Portal-to-Portal Act and Ohio law are in direct conflict. *See Claeys v. Gandalf Ltd.*, 303 F. Supp. 2d 890, 893 (S.D. Ohio 2004):

> Generally, FLSA claims are governed by a two-year statute of limitations. See 29 U.S.C. § 255(a). Such claims may be governed by a three-year statute of limitations, however, where the statutory violation was "willful." *Id.* In contrast, Ohio law provides for a two-year statute of limitations for claims based upon unpaid overtime compensation, but does not provide for an extension in the case of a willful violation by the employer. ***Accordingly, a plaintiff's state law claims may be barred even though his federal claims are not.***"

It strains credulity that the Ohio legislature would, on the one hand, intend to incorporate certain provisions of the Portal-to-Portal Act without express mention, and on the other hand expressly draft provisions into the Ohio overtime statute that contradict the Portal-to-Portal Act. Thus, what Defendants really seem to be saying is that the Ohio legislature obviously intended (though it did not expressly say so) to incorporate the provisions of the Portal-to-Portal Act favorable to employers, but not incorporate those provisions favorable to employees. How one reaches that conclusion other than through wishful thinking is not clear. Nevertheless, pursuant to the dispositive analysis as set forth in *Busk*, Defendants' contention that the OMWFSA incorporates the Portal-to-Portal Act fails as a matter of law, and Defendants' Motion should be denied.

> **D.  Contrary to Defendants' Arguments, No Ohio Court has Ever Held that the Portal-to-Portal Act is Incorporated into the OMWFSA.**

Finding their argument without support, Defendants' nevertheless attempt to establish that the Portal-to-Portal Act is incorporated into Ohio law by citing to a number of federal decisions that each miss the mark. For instance, Defendants' cite to *Thomas v. Speedway Super America, LLC*, 506 F.3d 496 (6th Cir. 2007) for the proposition that "the Ohio statute expressly incorporated the standards and principles found in the FLSA." In reality, Defendants' citation conspicuously fails to note that the quote in *Thomas* specifically referred to the exemptions to the FLSA found in Section 13.

Defendants' also reuse a tactic rejected by the Sixth Circuit in *Busk* by citing to various cases analyzing the FLSA concurrently with the OMWFSA on issues that do not implicate the Portal-to-Portal Act. For example, Defendants' cite to *Craig v. Bridge Bros. Trucking, LLC*, 823 F.3d 382, 385 n.1; *Heard v. Nielson*, 2017 WL 2426683, at *2 (S.D. Ohio June 2, 2017); *McCrimon*

9

*v. Inner City Nursing Home, Inc.*, 2011 WL 4632865, at *4 (N.D. Ohio Sept. 30, 2011) for the proposition that "Ohio's adoption of the FLSA's overtime provisions is unequivocal." This approach was flatly rejected by the Sixth Circuit:

> Defendants make multiple references to places where Nevada wage-hour law parallels the FLSA, and they refer the Court to cases holding that Nevada courts will interpret a provision of Nevada law the same as its parallel provision in the FLSA. None of that is surprising. But this reasoning is simply irrelevant where Nevada law has no provision parallel to a particular FLSA provision.

*Busk*, 905 F.3d at 403-404. Here, for precisely the same reasons, Defendants' reliance on cases that raise no Portal-to-Portal issues is "simply irrelevant" and unavailing.

Indeed, of the cases cited by Defendants, only two of them make any mention of the Portal-to-Portal Act whatsoever, and Defendants drastically overstate the relevant holdings. First, Defendants cite to *Twaddle v. RKE Trucking Co.*, 2006 U.S. Dist. LEXIS 18028 (S.D. Ohio Mar. 29, 2006). In *Twaddle*, the plaintiff moved for summary judgment on claims under the FLSA and the OMWFSA, and the defendant opposed by raising a Portal-to-Portal Act defense. The court first analyzed claims under the FLSA, holding that the Portal-to-Portal Act did not apply and ultimately entered summary judgment in favor of the plaintiff. The court subsequently granted summary judgment to plaintiff on the state law claim as well.

Defendants contend that *Twaddle* stands for the proposition that "the Portal-to-Portal Act applied *equally* to the plaintiffs' federal and state overtime claims, and its state law analysis ended there." (Defendants' Brief at p. 10) (emphasis in Defendants' Brief). Defendants' characterization of *Twaddle* selectively ignores the glaring fact that since the Portal-to-Portal Act was held inapplicable as to federal claims, the Court did not undertake any analysis as to whether the Portal-to-Portal Act is incorporated into the OMWFSA. Defendants' similarly overstate the relevance of

a second unpublished Southern District of Ohio opinion in *Lacy v. Reddy*, 2013 U.S. Dist. LEXIS 97718 (S.D. Ohio July 11, 2013). *Lacy,* like *Twaddle*, is devoid of any analysis as to whether the OMWFSA incorporates the Portal-to-Portal Act, and Defendants' reliance on *Lacy* is similarly unavailing.

As the Sixth Circuit held in *Busk,* the proper inquiry is how "the relevant state's highest court would rule in the case and are bound by controlling decisions of that court." *Busk*, 905 F.3d at 405. Defendants' analysis is notably devoid of any reference to Ohio Supreme Court authority. Consequently, Defendants' analysis misses the mark entirely and should be rejected.

  E. **Defendants' Reliance on *Vance* is Misplaced.**

Defendants contend that the Sixth Circuit's opinion in *Vance* is "far more instructive" than *Busk.* 852 F.3d 601 (6th Cir. 2017). *Vance*, like *Busk* and the present case, also concerned the issue of whether employee time spent undergoing Amazon's security screening process was compensable. Although Defendants' unsurprisingly prefer *Vance* to *Busk* because it reached the outcome that the Kentucky law did incorporate the Portal-to-Portal Act, the Sixth Circuit's analysis in *Vance* is identical to *Busk* and Defendants fare no better under *Vance*'s holding.

*Vance* reached a different outcome because Kentucky applies different rules of statutory construction than Ohio, Nevada, and Arizona. *Vance*, 852 F.3d at 611-613. Kentucky, unlike Ohio, does not follow the rule that the statute "must" be applied as written, but rather applies a rule that federal provisions are read into state law "absent a clear indication that the [Kentucky] General Assembly considered the revision and deliberately rejected it." *Id.* at 612-613. Moreover, unlike Ohio, *Vance*'s reasoning also turned on Kentucky administrative regulations concerning "principal activities," thus implicating the Portal-to-Portal Act. No such regulations exist in Ohio, and, therefore, the present case is further distinguished from *Vance*.

Defendants incorrectly contend that Ohio's rules of statutory construction are the same as Kentucky's, citing to a case that stands for the unremarkable proposition that "judicial interpretations of … federal provisions may be considered as persuasive authority in determining the meaning of comparable Ohio laws." Defendants Brief at p. 12 fn. 12, quoting *Stancourt v. Worthington City School Dist. Bd. of Edn.*, 841 N.E.d 3d 812, 822 (Ohio Ct. App. 2005). As the Portal-to-Portal Act did not arise from judicial interpretation, but was rather a distinct statutory amendment, Defendants' argument fails. Because Ohio's rules of statutory interpretation unequivocally require the statute to be applied as written, Defendants' reliance on *Vance* is misguided.

### F. Defendants' Argument as to Security Screenings Inappropriately Requires this Court to Ignore the Facts Pleaded in the Complaint and Draw Inferences in Defendants' Favor.

It is black-letter law that in considering a Motion for Judgment on the Pleadings, "courts must 'view the complaint in the light most favorable to the plaintiff, accepting as true all plausible well-pled factual allegations, and drawing 'all reasonable inferences' in favor of the plaintiff." *Barrio Bros., LLC v. Revolucion, LLC*, 2019 U.S. Dist. Lexis 179092, *7-8 (Barker, J.) (quoting *Kinney v. Anderson Lumber Co., Inc.*, No. 18-5146, 2018 U.S. App. LEXIS 26102 at *4 (6th Cir. Sept. 13, 2018) and *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 464 (6th Cir. 2013)).

Plaintiffs allege that Defendants "require" employees to proceed through a mandatory screening process prior to taking their lunch breaks, which results in a significant interruption to their lunch period. (Compl. at ¶ 20). Defendants deny that this requirement exists for employee lunch breaks, and contend that any employees going through security during lunch are doing so by choice. (Defendants' Brief at pp. 15-16). Consequently, the issue of whether employees are

required to proceed through a mandatory screening process or not during their lunch breaks amounts to a garden variety dispute of material fact found in virtually every civil lawsuit.

Defendants have not (and cannot) offer any explanation for their conclusion that this Court should depart from the well-settled rules requiring facts to be construed in Plaintiffs' favor in considering a Motion for Judgment on the Pleadings. Indeed, if a mere denial of factual allegations raised by Defendants were sufficient basis to grant judgment on the pleadings, virtually all civil complaints could be dismissed well in advance of discovery. Because Defendants' argument as to lunch break security screenings baldly ignores these fundamental rules it is meritless.

### G. Defendants' Argument as to "Exertion" has been Squarely Rejected by the Sixth Circuit as "Highly Dubious" and Should be Similarly Rejected Here.

Defendants next argue that time spent engaging in required security screenings is not compensable because—for reasons not articulated by Defendants—the act of going through security screenings does not require exertion. The very same argument was raised in *Busk* and rejected by the Sixth Circuit, which described this argument as "***highly dubious for a number of reasons, not the least of which is that undergoing security screening clearly does involve exertion.***" *Busk*, 401-402 (emphasis added). Thus, as a threshold matter, Defendants' exertion argument fails as it requires this Court to charitably assume facts in Defendants' favor regarding the mechanics of the security screenings in making the determination that the screenings genuinely required no exertion. As such inferences are neither appropriate in considering a motion for judgment on the pleadings nor supported here, Defendants' "exertion" argument should be set aside without further inquiry.

Defendants' "exertion" argument fails for the additional reason that it relies on a short-lived interpretation of the FLSA that existed for a few short months in 1944. The Supreme Court

described the history of the "exertion" requirement in its 2005 Opinion, *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005):

> In *Tennessee Coal, Iron & R. Co.* v. *Muscoda Local No. 123,* 321 U.S. 590, 64 S. Ct. 698, 88 L. Ed. 949 (1944), … we described "work or employment" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." The same year, in *Armour & Co.* v. *Wantock,* 323 U.S. 126, 65 S. Ct. 165, 89 L. Ed. 118 (1944), ***we clarified that "exertion" was not in fact necessary for an activity to constitute "work" under the FLSA***. We pointed out that "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen." *Id.*, at 133, 65 S. Ct. 165, 89 L. Ed. 118.

(emphasis added).

The Sixth Circuit reviewed the Supreme Court's historical explanation as set forth in *IBP* when issuing its *Vance* decision. *Busk*, in turn, relied on both *Vance* and *IBP*, as explained in its analysis:

> ***As this Court recognized in Vance,*** "[o]nly months after *Tennessee Coal*, the Court expanded the definition further, 'clarif[ying] that "exertion" was not in fact necessary for an activity to constitute "work" under the FLSA,' for 'an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen.'" *Busk* at 402 quoting *Vance*, 852 F.3d at 608 and *IBP*, 546 U.S. at 25.

(emphasis added).

As *Busk*'s controlling analysis is fatal to Defendants' position, Defendants resort to the argument that *Busk* was "wrongly decided" and represents a "departure from decades of precedent." (Defendants' Brief at p.17 fn. 5). Defendants' attempt to cast the controlling precedent in a negative light fails to withstand any degree of scrutiny, however, as *Busk*'s analysis is based on *Vance* (which Defendants clearly take no objection with) and which, in turn relies on

14

the Supreme Court's *IBP* analysis (which unquestionably remains good law). *Busk*'s analysis is in harmony with both *Vance* and *IBP*, neither of which support the unlikely resurrection of *Tennessee Coal*'s exertion requirement 75 years after its demise.

As set forth above, Ohio's rules of statutory construction compel a finding that the Portal-to-Portal Act is not incorporated into Ohio law. Accordingly, the time spent going through security screenings is compensable under Ohio law and, therefore, Defendants' Motion for Judgment on the Pleadings should be denied in its entirety.

**IV.     Conclusion.**

For the foregoing reasons, Plaintiffs respectfully request this Court Deny Defendants' Motion for Judgment on the Pleadings in its entirety.

>                             Respectfully Submitted,
>                             **NILGES DRAHER LLC**
>                             */s/ Christopher J. Lalak*
>                             Hans A. Nilges (0076017)
>                             7266 Portage Street, N.W., Suite D
>                             Massillon, OH 44646
>                             Telephone:    (330) 470-4428
>                             Email:        hans@ohlaborlaw.com
>
>                             Christopher J. Lalak (0090079)
>                             614 West Superior Ave, Suite 1148
>                             Cleveland, OH 44113
>                             Telephone:    (216) 230-2944
>                             E-mail:       clalak@ohlaborlaw.com
>
>                             *Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I certify that that the within matter is unassigned. In accordance with Local Rule 7.1(f), I further certify that the foregoing *Memorandum in Support of Plaintiff's Motion for Summary Judgment* does not exceed 15 pages in length.

>/s/ Christopher J. Lalak
>Christopher J. Lalak
>*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 25, 2019, a copy of the foregoing *Plaintiffs' Memorandum in Opposition to Defendants' Motion for Judgment on the Pleadings* was filed with the Court through the Court's Electronic Filing System. Parties may access this filing through the Court's System.

>/s/ Christopher J. Lalak
>Christopher J. Lalak
>
>*Counsel for Plaintiff*