IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **SAVON THOMAS, et al.,** | **CASE NO. 1:19-CV-01696** |
| **Plaintiffs,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **AMAZON.COM SERVICES, INC., et al.,** | **MEMORANDUM OF OPINION AND ORDER** |
| **Defendants.** | |

This matter comes before the Court upon the Motion for Judgment on the Pleadings ("Motion") of Defendants Amazon.com Services, Inc. and Amazon.com, Inc. (collectively, "Defendants").  (Doc. No. 16.)  Plaintiffs Savon Thomas and Colleen McLaughlin (collectively, "Plaintiffs") filed a brief in opposition to Defendants' Motion on November 25, 2019, to which Defendants replied on December 23, 2019.  (Doc. Nos. 19, 20.)  On January 24, 2020, Plaintiffs filed a Notice of Supplemental Authority, to which Defendants responded on January 30, 2020.  (Doc. Nos. 21, 22.)  On February 13, 2020, Defendants also filed a Notice of Supplemental Authority, to which Plaintiffs replied on February 20, 2020.  (Doc. Nos. 25, 26.)

For the following reasons, Defendants' Motion for Judgment on the Pleadings (Doc. No. 16) is GRANTED IN PART and DENIED IN PART.

**I. Background**

    **a. Factual Allegations**

Defendants jointly operate logistics facilities throughout Ohio (the "Ohio Amazon Fulfillment Centers"). (Doc. No. 1 at ¶ 13.)[1] Defendants employ Plaintiffs and other similarly situated warehouse workers to perform tasks related to merchandise stored and eventually shipped to customers from the Ohio Amazon Fulfillment Centers. (*Id.* at ¶ 14.) Defendants require warehouse workers to "clock in" by the beginning of their scheduled shift and to "clock out" at the end of their scheduled shifts. (*Id.* at ¶ 18.) After clocking out, Defendants require warehouse workers to proceed through a screening process prior to exiting the Ohio Amazon Fulfillment Centers. (*Id.* at ¶ 19.) In addition, Defendants require warehouse workers to proceed through the same screening process prior to taking their lunch breaks. (*Id.* at ¶ 20.)

As part of this mandatory post-shift and pre-lunch screening process, warehouse workers must wait in lines leading up to the security screening areas, proceed through a metal detector, and submit to an inspection of all bags and personal items the employee is carrying. (*Id.* at ¶¶ 21-24.) The security screening process routinely takes ten to twenty minutes to complete and can take longer with delays. (*Id.* at ¶ 27.) However, Defendants have never paid warehouse workers for time spent proceeding through this required post-shift and pre-lunch screening process. (*Id.* at ¶ 28.) For example, warehouse workers' lunch breaks are significantly reduced due to the required pre-lunch security screening, but Defendants always deduct a full thirty minutes for such lunch breaks. (*Id.* at ¶ 29.)

---

[1] The allegations contained in Plaintiffs' Complaint are assumed to be true solely for purposes of ruling on Defendants' Motion.

2

### b. Procedural History

On July 25, 2019, Plaintiffs filed a putative class action against Defendants in this Court, setting forth a single claim under the Ohio Minimum Fair Wage Standards Act ("OMFWSA"). (Doc. No. 1.) Plaintiffs assert that because Defendants have not paid warehouse workers for the time spent going through the mandatory screening process described above, warehouse workers were not paid for all hours worked, and such time was not counted for purposes of determining their entitlement to overtime. (*Id.* at ¶ 30.) According to Plaintiffs, this resulted in the underpayment of overtime compensation for every week in which warehouse workers otherwise worked forty hours in a workweek in violation of the OMFWSA. (*Id.* at ¶¶ 30, 39-53.)

On October 1, 2019, Defendants filed an Answer to Plaintiffs' Complaint. (Doc. No. 14.) Therein, Defendants allege that warehouse workers are not required to pass through a security screening prior to taking their meal breaks because Defendants provide on-site break room facilities inside the secured area where employees, including Plaintiffs, can take their meal breaks without having to pass through security screening. (*Id.* at ¶ 20.) Defendants assert that only those employees who choose to leave the secured area during meal breaks must pass through security screening. (*Id.*)

Shortly after filing their Answer, Defendants filed a Motion for Judgment on the Pleadings, seeking to dismiss the sole count in Plaintiffs' Complaint on several bases. (Doc. No. 16.) Specifically, Defendants argue that Plaintiffs' claim fails because (1) Ohio law has incorporated the Fair Labor Standards Act's ("FLSA") overtime standards, under which post-shift time spent passing through security screening is not compensable; (2) Plaintiffs were not required to pass through security screening when taking meal breaks; and (3) time spent walking through security screening

3

is not "work" because it requires no exertion. (Doc. No. 17.) Defendants' Motion has been fully briefed and is ripe for consideration.

## II. Standard of Review

Pursuant to Rule 12(c), "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (citation omitted).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

4

678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

#### a. Whether the OMFWSA Incorporates the Portal-to-Portal Act

First, Defendants argue that Ohio Revised Code ("O.R.C.") § 4111.03, under which Plaintiffs bring their claim, incorporates Section 7 of the FLSA, as amended, which includes the Portal-to-Portal Act. (Doc. No. 17 at 6-15.) As a result, Defendants assert that Plaintiffs' claim for the underpayment of overtime compensation fails because the Supreme Court has interpreted the Portal-to-Portal Act to mean that post-shift time spent passing through security screening is not compensable time. (*Id.*) In response, Plaintiffs contend that O.R.C. § 4111.03 does not incorporate the Portal-to-Portal Act. (Doc. No. 19 at 3-12.) The Court agrees with Defendants that O.R.C. § 4111.03 incorporates the Portal-to-Portal Act, and, therefore, Plaintiffs' claim based on time spent proceeding through the post-shift screening process fails as a matter of law.

5

When enacted in 1938, "the FLSA established a minimum wage and overtime compensation for each hour worked in excess of 40 hours in each workweek." *Integrity Staffing Solutions, Inc. v. Busk (Busk I)*, 574 U.S. 27, 31 (2014). However, the FLSA did not define "work" or "workweek," and the Supreme Court initially interpreted these terms broadly, which "provoked a flood of litigation." *Id.* In response, Congress enacted the Portal-to-Portal Act, finding that "the Fair Labor Standards Act of 1938, as amended, has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers." 29 U.S.C. § 251(a). The Portal-to-Portal Act "exempted employers from liability for future claims based on two categories of work-related activities." *Busk I*, 574 U.S. at 32. Specifically, the Portal-to-Portal Act provides, in relevant part, as follows:

> Except as provided in subsection (b), no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, . . . on account of the failure of such employer . . . to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947--
>
> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) *activities which are preliminary to or postliminary to said principal activity or activities*,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a) (emphasis added).

Importantly, in addressing claims as to whether time spent performing certain activities is compensable under the FLSA, the Supreme Court has made clear that the Portal-to-Portal Act is an

6

amendment to the FLSA. *See Busk I*, 574 U.S. at 29 ("The question presented is whether the employees' time spent waiting to undergo and undergoing those security screenings is compensable under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.*, as amended by the Portal–to–Portal Act of 1947, § 251 *et seq.*"); *IBP, Inc. v. Alvarez*, 546 U.S. 21, 26 (2005) ("Congress passed the Portal-to-Portal Act, amending certain provisions of the FLSA."). The Sixth Circuit has also described the Portal-to-Portal Act "as an amendment to the FLSA" that "'narrowed the coverage of the [Act]' by excluding certain 'preliminary' and 'postliminary' activities from the FLSA's compensation requirements." *Vance v. Amazon.com, Inc. (In re Amazon.com, Inc.)*, 852 F.3d 601, 607 (6th Cir. 2017). In addition, another court from this District recently held that "[t]he Portal-to-Portal Act is an amendment to the FLSA, which specifically sought to clarify the overtime compensation provisions of the FLSA, i.e. Section 7." *Duncan-Watts v. Nestle USA, Inc.*, No. 1:19 CV 01437, 2020 WL 589042, at *5 (N.D. Ohio Feb. 5, 2020).

In *Busk I*, applying the Portal-to-Portal Act, the Supreme Court addressed whether warehouse workers' time spent undergoing a mandatory security screening—essentially identical to the one at issue in this case—before leaving the warehouse each day was compensable under the FLSA. 574 U.S. at 29. Ultimately, the Supreme Court found that the post-shift security screenings were postliminary activities that are not compensable under the FLSA, as amended by the Portal-to-Portal Act. *Id.* at 35.

The issue in this case is whether Ohio law incorporates the Portal-to-Portal Act, such that Plaintiffs' claims for compensation for time undergoing security screenings after their shift also fails under the OMFWSA. When applying state law, this Court must "anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court." *Vance*,

852 F.3d at 610 (quoting *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005)). If, as here, "'the state supreme court has not yet addressed the issue,' we render a prediction 'by looking to all the available data.'" *Id.* (quoting *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001)). "Sources of relevant data include the decisions (or dicta) of the state's highest court in analogous cases, pronouncements from other state courts, and regulatory guidance." *Busk v. Integrity Staffing Solutions, Inc. ("Busk II")*, 905 F.3d 387, 395 (6th Cir. 2018).

In Ohio, "[t]he primary goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute." *State v. Lowe*, 112 Ohio St.3d 507, 508 (2007). "The court must first look to the plain language of the statute itself to determine the legislative intent," and "[a]n unambiguous statute must be applied in a manner consistent with the plain meaning of the statutory language." *Id.*

In this case, the relevant provision of the OMWFSA provides:

An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, *in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the "Fair Labor Standards Act of 1938," 52 Stat. 1060, 29 U.S.C.A. 207, 213, as amended.*

O.R.C. § 4111.03(A). Sections 7 and 13 of the FLSA provide the overtime compensation requirements and exemptions, respectively, under the FLSA. *See* 29 U.S.C. §§ 207, 213. Thus, as a result of their express incorporation under Ohio law, courts routinely analyze Ohio state law overtime claims and FLSA claims concurrently, reasoning that the outcome as to liability under either law is invariably the same. *E.g.*, *Craig v. Bridge Bros. Trucking, LLC*, 823 F.3d 382, 385 n.1 (6th Cir. 2016) ("Because the FLSA and the OMFWSA have the same overtime requirements, the outcomes will be the same and the claims can be evaluated together."); *Heard v. Nielson*, No. 1:16-cv-1002, 2017 WL

8

2426683, at *2 (S.D. Ohio June 2, 2017) ("Ohio law incorporates the FLSA's definitions, standards, and principles for its minimum wage and overtime compensation provisions. . . . Accordingly, the claims may be analyzed together.").

Significantly, in *Duncan-Watts*, as a result of the incorporation of Section 7 of the FLSA, "as amended," the court held that the Portal-to-Portal Act applied to Ohio state law claims for overtime compensation under the OMFWSA because the Portal-to-Portal Act amended Section 7. 2020 WL 589042, at *5-6. In that case, as here, the plaintiff argued that "Ohio law does not incorporate the Portal-to-Portal Act and 'no similar law has ever been passed in Ohio that excepts preliminary and postliminary acts from compensable time.'" *Id.* at *5. The court rejected the plaintiff's argument, reasoning:

> Section 7 of the FLSA pertains to the calculation of overtime compensation. *See* 29 U.S.C. § 207. The Portal-to-Portal Act is an amendment to the FLSA, which specifically sought to clarify the overtime compensation provisions of the FLSA, i.e. Section 7. *See* 29 U.S.C. § 254. *See also IBP, Inc. v. Alvarez*, 546 U.S. 21, 24 (2005) (characterizing the Portal-to-Portal Act as an amendment to the FLSA). Thus, under the express direction of O.R.C. § 4111.03, overtime claims brought under the OMFWSA are evaluated in the same manner as claims brought under Section 7 of the FLSA, which would include the Portal-to-Portal Act.

*Id.* However, the court found that the plaintiff's FLSA claim was not barred by the Portal-to-Portal Act, and, thus, her claim under the OMFWSA survived as well. *Id.* at *6. The court's holding in *Duncan-Watts* is in line with several other cases that have applied the Portal-to-Portal Act to claims under both the FLSA and the OMFWSA, although these cases did not explicitly address the issue of whether the Portal-to-Portal Act had been adopted under Ohio law, as they likewise found that the Portal-to-Portal Act did not preclude the plaintiffs' claims. *See Wilson v. PrimeSource Health Care of Ohio, Inc.*, No. 1:16-CV-1298, 2017 WL 2869341, at *5 (N.D. Ohio July 5, 2017); *Lacy v. Reddy*

*Elec. Co.*, No. 3:11–cv–52, 2013 WL 3580309, at *5-6 (S.D. Ohio July 11, 2013); *Twaddle v. RKE Trucking Co.*, No. 2:04-CV-557, 2006 WL 840388, at *6, *13 (S.D. Ohio Mar. 29, 2006).

This Court agrees with the analysis provided by the court in *Duncan-Watts*, and finds that the Portal-to-Portal Act is an amendment to Section 7 of the FLSA that is expressly incorporated into the OMFWSA. Pursuant to O.R.C. § 4111.03, employers are required to pay employees overtime compensation "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the 'Fair Labor Standards Act of 1938,' . . . *as amended*." O.R.C. § 4111.03 (emphasis added). Courts unequivocally regard the Portal-to-Portal Act as an amendment to the FLSA. Additionally, the Portal-to-Portal Act altered the overtime compensation requirements provided in Section 7 of the FLSA as a result of courts' overly broad interpretations of that section. Specifically, the Portal-to-Portal Act clarified that in actions brought to enforce Section 7, time spent performing preliminary and postliminary activities is not compensable. *See* 29 U.S.C. § 254(a). Accordingly, the Portal-to-Portal Act specifically amended Section 7 of the FLSA, and, as a result, is explicitly incorporated into the OMFWSA. This conclusion is further supported by the fact that O.R.C. § 4111.03 was enacted after the Portal-to-Portal Act amended the FLSA. It seems highly unlikely that the Ohio legislature would have incorporated the FLSA's overtime compensation requirements, but also intended to depart from the FLSA with respect to an important amendment affecting what work time is compensable.

Because the Portal-to-Portal Act applies to Plaintiffs' claim for overtime compensation under Ohio law, Plaintiffs' claim with respect to time spent undergoing post-shift security screenings fails pursuant to the Supreme Court's holding in *Busk I*. 574 U.S. at 29 ("The question presented is whether the employees' time spent waiting to undergo and undergoing those security screenings is

10

compensable under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.*, as amended by the Portal–to–Portal Act of 1947, § 251 *et seq.* We hold that the time is not compensable."). Such screenings are "noncompensable postliminary activities." *Id.* at 35.

Plaintiffs make several arguments opposing this conclusion, but the Court finds them unpersuasive. First, Plaintiffs rely on the Sixth Circuit's decision in *Busk II*, which held that Nevada's and Arizona's wage and hour statutes did not incorporate the Portal-to-Portal Act. 905 F.3d at 402-05. However, *Busk II* is easily distinguishable from the instant matter, as neither Nevada's nor Arizona's statutes explicitly incorporated the FLSA or the Portal-to-Portal Act. *Id.* at 404-05. Indeed, the Sixth Circuit noted that "the Nevada legislature has chosen not to affirmatively adopt the law anywhere in the Nevada state code," and that "nothing in the Arizona code seems to parallel or incorporate the Portal-to-Portal Act." *Id.* at 404. At most, Nevada law paralleled certain provisions of the FLSA, but not the Portal-to-Portal Act. *Id.* at 403-04. In contrast, Ohio law expressly incorporates all of Section 7 of the FLSA, as amended. O.R.C. § 4111.03(A). Because the Portal-to-Portal Act amended Section 7, it was incorporated into Ohio law, and it was not necessary to specify the amendment by name, as Plaintiffs argue. (Doc. No. 19 at 7.) If anything, because of this express incorporation, this case is more similar to—and actually presents even more compelling circumstances for incorporation than—*Vance*, in which the Sixth Circuit found that Kentucky wage and hour laws incorporated the Portal-to-Portal Act. 852 F.3d at 615.

Next, Plaintiffs contend that the Portal-to-Portal Act did not amend either Section 7 or Section 13—the only sections of the FLSA expressly incorporated—because the Portal-to-Portal Act is not codified in Sections 7 and 13, but rather at 29 U.S.C. §§ 251-62. (Doc. No. 19 at 6-7.) As discussed above, however, the Portal-to-Portal Act is an amendment to the FLSA, and the provision of the

11

Portal-to-Portal Act at issue in this case directly affected the application of Section 7. As such, the Court finds that the Portal-to-Portal Act did amend Section 7, despite the fact that it may not have been codified in the same section. *See Dunan-Watts*, 2020 WL 589042, at *5. Indeed, Plaintiffs do not point to any other provisions of the FLSA that may have been amended by the provision of the Portal-to-Portal Act at issue.

Plaintiffs also assert that differences between the OMFWSA and the FLSA and the Portal-to-Portal Act demonstrate that the OMFWSA does not incorporate all amendments to the FLSA, such as the Portal-to-Portal Act. (Doc. No. 19 at 7-9.) For example, Plaintiffs point out that Ohio law has not adopted the FLSA's opt-in collective procedure provided for in 29 U.S.C. § 216(b). (*Id.* at 7-8.) They also note that a separate provision of the Portal-to-Portal Act conflicts with Ohio law with respect to limitations periods and liquidated damages. (*Id.* at 8.) But the Court finds these distinctions irrelevant. None of these issues are relevant to the overtime compensation requirements delineated in Section 7 of the FLSA, and, therefore, clearly have not been incorporated under Ohio law. By contrast, the Portal-to-Portal Act's amendments regarding what is compensable within the meaning of Section 7 of the FLSA are precisely among the amendments to Section 7 that are incorporated into the OMFWSA. Courts recognize that the liability imposed by Section 7 of the FLSA is identical to that imposed by O.R.C. § 4111.03, but that other aspects of the FLSA may differ from Ohio law. *See, e.g.*, *Heard*, 2017 WL 2426683, at *4 ("Although the FLSA and the Ohio law use the same standards to determine liability, the laws provide different measures of damages.").

Finally, Plaintiffs argue that there is a proposed bill in the Ohio Senate that would amend the OMFWSA to exclude preliminary and postliminary activity from Ohio's overtime compensation requirements, which would be unnecessary if Ohio law already excluded such activities, as under

Defendants' interpretation. (Doc. No. 21.) Plaintiffs also argue that an analysis of this bill by the Ohio Legislative Service Commission ("OLSC") indicates that there is currently a requirement to compensate employees for such preliminary and postliminary tasks. (*Id.*) However, none of this changes the Court's determination that the current text incorporates the Portal-to-Portal Act, as there are other reasons the bill may have been introduced, such as merely to clarify the law. *See Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 715 F.3d 631, 643 (7th Cir. 2013) ("This legislative attempt to expand MSHA's powers does not require us to interpret its existing powers narrowly. There are plenty of possible reasons to propose such legislation besides an understanding that MSHA currently could not demand the records here. The fact that this issue is being litigated in these petitions for review could prompt MSHA or others to undertake legislative efforts to clarify and support its understanding of its powers."). In fact, Defendants cite testimony from the bill's sponsors indicating that they view the proposed amendment as a clarification of the existing law. (Doc. No. 22 at 4.) Nor is the Court bound by OLSC's analysis. *See Jacobson v. Kaforey*, 149 Ohio St.3d 398, 406 (2016) ("'Although this court is not bound by' the analyses prepared by the Ohio Legislative Service Commission, 'we may refer to them when we find them helpful and objective.'") (quoting *Meeks v. Papadopulos*, 62 Ohio St.2d 187, 191 (1980)).

Consequently, the Court finds that dismissal of Plaintiffs' claim is warranted to the extent that it is based on unpaid time spent undergoing post-shift security screenings. Defendants' Motion is granted in that regard.

However, Plaintiffs also allege that Defendants wrongfully withheld payment for the time warehouse workers spent going through the same mandatory security screenings prior to taking their meal breaks. (Doc. No. 1 at ¶¶ 28-29.) It is slightly unclear whether Defendants argue that

incorporation of the Portal-to-Portal Act under Ohio law also renders the time spent undergoing the required pre-lunch security screening not compensable.  To the extent Defendants do raise such an argument, the Court finds it lacks merit.

In *Busk II*, the Sixth Circuit indicated that incorporation of the Portal-to-Portal Act under state law does not necessarily preclude claims for uncompensated work performed during the workday, such as before a lunch break.  905 F.3d at 401 n.3.  Specifically, the Sixth Circuit held:

> [E]ven if the Portal-to-Portal Act does apply to Nevada wage claims generally, it does not apply to Plaintiffs' claims relating to their pre-meal security screenings.  This is because "[a]s the statute's use of the words 'preliminary' and 'postliminary' suggests, § 254(a)(2), and as our precedents make clear, the Portal-to-Portal Act of 1947 is primarily concerned with defining the beginning and end of the workday." *Integrity Staffing*, 135 S.Ct. at 520 (Sotomayor, J., concurring) (citing *IBP, Inc.*, 546 U.S. at 34-37, 126 S.Ct. 514).  On this reasoning, the Portal-to-Portal Act does not apply to claims that employees were uncompensated for time spent *during* the workday.  Therefore, if undergoing security screenings is "work" under Nevada law, then the district court erred in dismissing the Nevada plaintiffs' claims relating to their shortened meal-periods.

*Id.*; *see also* 29 C.F.R. § 790.6(b) ("[A] rest period or a lunch period is part of the 'workday', and section 4 of the Portal Act therefore plays no part in determining whether such a period, under the particular circumstances presented, is or is not compensable, or whether it should be included in the computation of hours worked.").

Therefore, although the OMFWSA incorporates the Portal-to-Portal Act, the Portal-to-Portal Act is inapplicable to Plaintiffs' claim to the extent it is based on the time warehouse workers spend undergoing the required pre-lunch security screening, which resulted in a shortened lunch break.  As such, the Portal-to-Portal Act does not require dismissal of that portion of Plaintiffs' claim.  However, Defendants offer two additional arguments as to why Plaintiffs' claim related to pre-lunch security screening should be dismissed, which are addressed below.

14

### b. Whether the Pre-Lunch Security Screening Process Is Mandatory

First, Defendants argue that the pre-lunch security screening is not required because, as alleged in their Answer, warehouse workers can take their meal breaks within a secured area without going through the screening. (Doc. No. 17 at 15-16.) Defendants contend dismissal is appropriate because Plaintiffs have not disputed these allegations. (*Id.*) In response, Plaintiffs assert that they have alleged that the pre-lunch security screening is mandatory, and, as a result, there is a dispute of material fact that must be resolved in their favor and precludes dismissal at this stage. (Doc. No. 19 at 12-13.) The Court agrees.

"Under Rule 7(A), a 'plaintiff is not required to reply to affirmative defenses or new matter appearing in the answer.'" *Osberry v. Slusher*, 750 F. App'x 385, 389 (6th Cir. 2018) (citations omitted). "And under Rule 8(b)(6), where new allegations are in a pleading to which no responsive pleading is required, the court must consider the new allegations as denied." *Id.* In addition, as noted earlier, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true." *JPMorgan Chase Bank*, 510 F.3d at 581 (citation omitted).

Because Plaintiffs did not have to respond to Defendants' Answer, the Court must assume that Plaintiffs deny any new allegations in the Answer, including Defendants' allegations relating to the ability of warehouse workers to take their lunch breaks without passing through the security screening. Thus, Plaintiffs were not required to specifically dispute these allegations in their Complaint or otherwise. *See Osberry*, 750 F. App'x at 389-90 (rejecting the defendants' argument that the court should "accept some allegations in the answer as true because [the plaintiff's] complaint fail[ed] to contradict all the [defendants'] counter-allegations"). Moreover, Plaintiffs have adequately

alleged that the pre-lunch security screenings were mandatory. (*See* Doc. No. 1 at ¶¶ 20, 26.) At this stage, Plaintiffs' allegations must be accepted as true. As a result, the Court finds no merit to Defendants' argument in this regard.

### c. Whether Plaintiffs' Claim Fails Due to a Lack of Exertion

Second, Defendants argue that Plaintiffs' claim fails for the additional reason that time spent walking through security is not "work" under Ohio law because it requires no exertion. (Doc. No. 17 at 16-19.) Plaintiffs assert this argument fails because walking through security does require exertion, and, regardless, exertion is no longer a requirement for an activity to be considered work. (Doc. No. 19 at 13-15.) The Court concludes that dismissal on this basis is not appropriate, as Defendants' exact argument was raised in *Busk II* and rejected by the Sixth Circuit. 905 F.3d at 400-01.

In *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, the Supreme Court defined "work" as "*physical or mental exertion* (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." 321 U.S. 590, 598 (1944) (emphasis added). However, "[o]nly months after *Tennessee Coal*, the Court expanded the definition further, 'clarif[ying] that "exertion" was not in fact necessary for an activity to constitute "work" under the FLSA,' for 'an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen.'" *Vance*, 852 F.3d at 608 (quoting *IBP*, 546 U.S. at 25). Thus, in *Busk II*, the Sixth Circuit rejected the defendants' argument that undergoing security screening is not "work" due to a lack of exertion because there is no such exertion requirement. 905 F.3d at 401. Moreover, the Court held that "undergoing security screening clearly does involve exertion." *Id.* at 400-01.

16

Defendants argue that *Busk II* was wrongly decided to the extent that the Sixth Circuit found that exertion is no longer required in order for an activity to constitute "work." (Doc. No. 17 at 17 n.5.) But even assuming Defendants' are correct in that regard, the Sixth Circuit also found that undergoing security screening does require exertion. Thus, Defendants' exertion argument does not warrant the dismissal of Plaintiffs' claim, especially at this stage of the proceedings.

## IV. Conclusion

For the reasons set forth above, Defendants' Motion for Judgment on the Pleadings (Doc. No. 16) is GRANTED IN PART and DENIED IN PART. Defendants' Motion is GRANTED to the extent Plaintiffs' claim is based on the underpayment of overtime compensation related to time spent proceeding through the post-shift security screening process. Defendants' Motion is DENIED to the extent Plaintiffs' claim is based on the underpayment of overtime compensation related to time spent proceeding through the pre-lunch security screening process.

**IT IS SO ORDERED.**

    *s/Pamela A. Barker*
PAMELA A. BARKER
Date: May 21, 2020    U. S. DISTRICT JUDGE