UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SAVON THOMAS, on behalf of himself and all others similarly situated, | ) ) ) | Case No. 1:19-cv-01696 |
| | ) | Judge J. Philip Calabrese |
| Plaintiff, | ) ) | Magistrate Judge Thomas M. Parker |
| v. | ) ) | |
| AMAZON.COM SERVICES, INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**OPINION AND ORDER**

Plaintiffs Savon Thomas and Colleen McLaughlin, employees at an Amazon fulfillment center in Summit County, Ohio, filed a class action lawsuit against Defendants Amazon.com Services, Inc. and Amazon.com, Inc., alleging that Amazon violated Ohio's Minimum Fair Wage Standards Act by failing to pay employees for time spent undergoing security screenings before lunch breaks at their respective jobsites. The parties stipulated to the dismissal of Ms. McLaughlin's claim without prejudice. ([ECF No. 37](#); [ECF No. 38](#).) Defendants move for summary judgment, but the Court lacks subject matter jurisdiction over this lawsuit. Therefore, the Court **VACATES** the proceedings to date and **DISMISSES** this action **WITHOUT PREJUDICE**.

**STATEMENT OF THE CASE**

Plaintiff filed a putative class action against Defendants, asserting a single claim under the Ohio Minimum Fair Wage Standards Act and invoking the Court's

diversity jurisdiction. (ECF No. 1, ¶¶ 4, 39–53, PageID #1, 7–8.) As originally pleaded, Plaintiff alleged that Defendants failed to pay workers for time spent going through a mandatory security screening process twice per shift: at the end of the shift and before lunch breaks. (*Id.*, ¶¶ 18 & 19, PageID #3.) According to the complaint, "Defendants' mandatory post-shift and pre-lunch screening process routinely takes up to between 10 and 20 minutes." (*Id.*, ¶ 27, PageID 4.) Plaintiff alleges that workers regularly work more than forty hours per workweek and that Defendants did not pay them for overtime and underpaid overtime compensation. (*Id.*, ¶¶ 17, 30, PageID #3, 5.)

After answering, Defendants moved for judgment on the pleadings. (ECF No. 16.) Before reassignment of the case, the Court granted the motion in part and denied it in part. (ECF No. 27.) As a result of that ruling, Plaintiff's claim was limited to the underpayment of overtime compensation for the time spent in "the pre-lunch security screenings [that] were mandatory." (*Id.*, PageID #244.)

After ruling on the motion for judgment on the pleadings, and before reassignment of the case, the Court consolidated this case with *Gorie v. Amazon.com Services, LLC*, Case No. 1:20-cv-1387. In *Gorie*, Plaintiff—represented by different counsel—challenges the same compensation practices at Amazon fulfillment centers in Ohio under the Fair Labor Standards Practices Act. (*See generally Gorie* ECF No. 1.) In both cases, the parties moved to amend the case management order to sequence the resolution of the claims in the two consolidated cases. (ECF No. 35; *Gorie* ECF No. 27.) Specifically, "the parties agree[d] that discovery in the

consolidated actions should be bifurcated so that discovery specific to the claims of Gorie and the putative collective would begin only after discovery on the claims of Thomas and McLaughlin is completed and motions for summary judgment on their claims are resolved." (ECF No. 35, PageID #279; *Gorie* ECF No. 27, PageID #182.) With respect to conditional certification of a collective in *Gorie*, the parties left the timing of a motion to Plaintiff but deferred "notice until after a final determination on the merits of the *Thomas* named plaintiffs' claims." (ECF No. 35, PageID #280; *Gorie* ECF No. 27, PageID #183.)

In the Court's view, this procedure is inconsistent with Rule 23, which directs determination of class certification "[a]t an early practicable time," which generally comes before summary judgment. Fed. R. Civ. P. 23(c)(1)(A). Nonetheless, at a status conference on October 1, 2020 before reassignment of the case, the Court granted the motion to amend the case management order as the parties proposed in both cases. (ECF No. 36, PageID #284.) Accordingly, the Court ordered the parties' proposed sequencing of the cases:

> Plaintiff Gorie may move for conditional class certification whenever she chooses, provided that in the event the court grants notice, the parties agree to defer the issuance of notice, and the Court orders that the issuance of notice be deferred, until after a final determination on the merits of the Thomas named plaintiffs' claims.

(*Id.*, PageID #285.) The Court ordered the parties to submit a proposed scheduling order within fourteen days of a ruling on Defendants' motion for summary judgment in the *Thomas* case. (*Id.*)

Subsequently, Plaintiff filed several opt-in forms in *Gorie*. (*Gorie* ECF Nos. 28, 29, 30, 31, 32.) Both cases were reassigned on December 9, 2021.

3

## JURISDICTION

Because of the limited jurisdiction of the federal courts, the Court has an independent obligation to examine its own jurisdiction to ensure that it has the authority to proceed. *See, e.g., Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017) (citations and quotations omitted); *Mercurio v. American Express Centurion Bank*, 363 F. Supp. 2d 936, 938 (N.D. Ohio 2005). "[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009). Jurisdiction is determined at the time of the filing of the complaint. *See, e.g., Farmer v. Fisher*, 386 F.App'x 554, 557 (6th Cir. 2010) (per curiam) (citing *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 540 (6th Cir. 2006)).

In the complaint, Plaintiff invokes the Court's jurisdiction "pursuant to 28 U.S.C. § 1332." (ECF No. 1, ¶ 4, PageID #1.) Although the complaint does not identify the specific subsection of Section 1332 that confers jurisdiction, Plaintiff goes on to allege that "the amount in controversy exceeds $75,000, exclusive of interest and costs," making clear that the complaint invokes conventional diversity jurisdiction under 28 U.S.C. § 1332(a). (*Id.*)

Because Plaintiff asserts only a single claim under State law and invokes the Court's diversity jurisdiction, the Court ordered the parties to address whether the Court has jurisdiction. (ECF No. 43.) Although the parties are diverse, neither party contends the Court has jurisdiction under Section 1332(a). (*See generally* ECF No. 45; ECF No. 46, PageID #566 n.1.) The Court agrees. Although the complaint does not allege the times each individual plaintiff worked for Amazon, their dates of

4

employment, or the rough amounts of unpaid or underpaid overtime compensation each alleges, some generous assumptions establish that the allegations do not come close to satisfying the amount in controversy. Assuming both Mr. Thomas and Ms. McLaughlin worked forty hours per week for two years at a rate of $15 per hour and were not paid 20 minutes per shift in connection with mandatory security screenings as alleged (*see* [ECF No. 1](#), ¶ 27, PageID #4), even rounding those calculations up yields less than $10,000 in controversy. Allowing for additional unpaid amounts and attorneys' fees leaves the amount in controversy well below the jurisdictional amount.

Under the law of this Circuit, plaintiffs in a class action may not aggregate the value of their respective claims to meet the amount-in-controversy requirement under Section 1332(a) to establish federal jurisdiction. *See Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 823–24 (6th Cir. 2006). In other words, for the Court to have diversity jurisdiction, each plaintiff must demonstrate that his or her claims meet the minimum amount-in-controversy requirement. Aggregation is only permitted where the plaintiffs "unite to enforce a single title or right in which they have a common and undivided interest." *Snyder v. Harris*, 394 U.S. 332, 335 (1969). Such is not the case here because each prospective plaintiff has separate claims to the amounts Defendants allegedly owe to them for overtime hours worked.

The parties advance two alternative bases for the Court's jurisdiction. The Court considers each in turn.

5

**I.    Supplemental Jurisdiction**

Plaintiff and Defendants maintain that the Court may exercise supplemental or ancillary jurisdiction. (ECF No. 45, PageID #555; ECF No. 46, PageID #567.) This argument depends on the consolidation between the *Thomas* and *Gorie* matters. Because the Court has federal question jurisdiction over the claim in *Gorie* under the Fair Labor Standards Act, the parties suggest that the Court may exercise supplemental or ancillary jurisdiction over *Thomas*.

Without question, the allegations in the two suits involve the same operative facts. But the argument that the Court may exercise supplemental jurisdiction in *Thomas* gets the jurisdictional basis precisely backward. "Ancillary jurisdiction may extend to claims having a factual and logical dependence on 'the primary lawsuit.'" *Peacock v. Thomas*, 516 U.S. 349, 355 (1996) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 376 (1978)). However, the primary lawsuit must have an independent basis for federal jurisdiction. *Id.* Here, the parties and the Court treated *Thomas* as the primary lawsuit, perhaps because it was filed first. Whatever the reason, the Court's case management order gave priority to *Thomas* over *Gorie*. (ECF No. 36.) Indeed, supplemental jurisdiction operates on a second or subsequent lawsuit, not the primary lawsuit which must have an independent basis for federal jurisdiction because jurisdiction is determined at the time of filing. Even if *Gorie* were the primary lawsuit, the Court would still need an independent basis for this action, which was filed some eleven months earlier and not consolidated with *Gorie* until August 31, 2020, by which time this case had been pending in federal court for

6

over thirteen months. Therefore, relying on supplemental or ancillary jurisdiction begs the question of the jurisdictional basis that would permit this matter to proceed in federal court in the first place.

## II.     Jurisdiction Under the Class Action Fairness Act

Although Plaintiff did not invoke jurisdiction under the Class Action Fairness Act, Defendants maintain that the Act confers federal jurisdiction. (*See generally* ECF No. 45.) In seeking to establish federal jurisdiction on grounds Plaintiff does not allege, Defendants assume this burden. *See Roberts v. Mars Petcare US, Inc.*, 874 F.3d 953, 955 (6th Cir. 2017); *Graiser v. Visionworks of America, Inc.*, 819 F.3d 277, 282 (6th Cir. 2016). The Court assumes that the Class Action Fairness Act may confer federal jurisdiction even though Plaintiff did not plead as much. *See Graiser*, 819 F.3d at 287. Again, there is no question that the parties satisfy the Act's minimal diversity requirements. As pleaded, Mr. Thomas and Ms. McLaughlin are citizens of Ohio, Defendants have their principal place of business in Washington. (ECF No. 1, ¶¶ 6, 9–11, PageID #2.) And Defendants are incorporated in Delaware. (*See* ECF No. 45-2, PageID #564, 565.)

Therefore, under the Class Action Fairness Act, the Court has jurisdiction if "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action." 28 U.S.C. § 1332(d)(2). Unlike Rule 23, the Act permits plaintiffs to aggregate their claims to meet the amount-in-controversy requirement. 28 U.S.C. § 1332(d)(6); *see also Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 166 (2014).

7

The complaint alleges a class of "all present and former Ohio hourly warehouse workers employed by Amazon.com, Inc. and/or Amazon.com Services, Inc. during the period measured from two years preceding the commencement of this action [on July 25, 2019]." (ECF No. 1, ¶ 32, PageID #5.) To estimate the amount in controversy, Amazon presents evidence that there were approximately 21,870 hourly workers at its fulfillment centers in Ohio during the alleged class period—well in excess of the 100-person requirement under the Class Action Fairness Act. (ECF No. 45-1, ¶ 4, PageID #559–60; 28 U.S.C. § 1332(d)(5)(b).) Defendants also present evidence that the average hourly rate for these workers was $15.49 and that there were 188,243 workweeks where these employees worked at least forty hours. (ECF No. 45-1, ¶¶ 5, 6, PageID #560.)

Based on these variables, Defendants calculate exposure in excess of $5 million. (ECF No. 45, PageID #554.) Their calculation relies on each class member working "two twenty minute allegedly unpaid [security] screenings per day." (*Id*.) With this assumption, Defendants calculate exposure in excess of $11 million. (*Id*., PageID # 554–55.) Working with Amazon's math, using "the lower estimate of 10 minutes per screening, . . . the amount in controversy still would be in excess of the $5 million threshold at $5.82 million." (*Id*., PageID #555 n.3.)

Amazon's calculation depends on a misreading of the complaint. Defendants maintain that Plaintiff pleads liability for *two* unpaid mandatory security screenings per shift, each involving between 10 and 20 minutes to complete. But that is not what the complaint alleges. It pleads that "Defendants' mandatory post-shift and pre-

8

lunch screening process routinely takes up to between 10 and 20 minutes for Ohio Warehouse Workers to complete, and with delays it can last longer." (ECF No. 1, ¶ 27, PageID #4.)  In other words, the complaint alleges between 10 and 20 minutes of unpaid time for workers to go through mandatory security screenings twice per shift.  As pleaded, the complaint makes this reading plain.  It links the two security screenings at issue ("post-shift" and "pre-lunch") with the conjunction "and" and identifies the time at issue in the lawsuit in its entirety as "up to" 10 or 20 minutes.  (*Id.*)  It does not include the word "each" or otherwise clarify, as Amazon assumes, that the security screening takes 10 to 20 minutes each time a worker goes through it.  Defendants' reading is not implausible, but it is not the only one or even the best one.

Reading the complaint as involving 10 to 20 minutes per shift, not per screening, the amount of time involved is 50% of the amount Defendants include in their calculations.  As a result, the low-end estimate of the amount in controversy drops to about $2.9 million, using Amazon's evidence and calculations.  At the high end, the amount in controversy exceeds $5 million, at just over $5.8 million.  Neither amount includes an estimate of Amazon's exposure from the date of filing of the complaint through the date a class might be certified.  But Defendants did not provide any information from which the Court could make any such estimation.  Indeed, for all the Court knows, shortly after Plaintiff filed suit, Amazon changed its compensation practices to minimize or eliminate any potential for liability under Ohio law for unpaid or underpaid overtime compensation relating to security screenings.

9

Nor does either amount include attorneys' fees. Under Ohio's overtime statute, a prevailing plaintiff may recover reasonable attorneys' fees. Ohio Rev. Code § 4111.10(A). No party provides the Court with any information for valuing an award of attorneys' fees. On the facts pleaded, it is difficult for the Court, in its experience, to see a reasonable award of fees bring an amount in controversy at the lower end of the potential exposure ($2.9 million) above the Class Action Fairness Act's jurisdictional threshold in all, or even most, circumstances.

The party invoking federal jurisdiction bears the burden of establishing the jurisdictional prerequisites. *See, e.g.*, *Roberts*, 874 F.3d at 955; *Graiser*, 819 F.3d at 282. Because the complaint may or may not place the Class Action Fairness Act's jurisdictional amount in controversy, the Court cannot say that it has jurisdiction. In fact, in the Court's view, the complaint as pleaded likely places less than $5 million in controversy, even accounting for attorneys' fees and costs. Additionally, the Court questions whether Defendants' position regarding the amount in controversy and their potential exposure would be the same had this issue arisen at the outset of the litigation, as it should have. That is an additional reason, beyond the requirements of Rule 23, that the procedure the parties proposed makes little procedural sense. Defendants have not carried the burden of establishing federal jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court determines that it lacks subject matter jurisdiction over this action. Where a court lacks subject matter jurisdiction, its proceedings are void. *See, e.g.*, *Federal Nat'l Mort. Ass'n v. LeCrone*, 868 F.2d 190, 195 (6th Cir. 1989) (vacating grant of summary judgment where district court lacked

jurisdiction). Accordingly, the Court **VACATES** the proceedings in the case to date and **DISMISSES** the action **WITHOUT PREJUDICE**.

    **SO ORDERED.**

Dated: September 22, 2021

                                  J. Philip Calabrese
                                  United States District Judge
                                  Northern District of Ohio